643 S.E.2d 644 (2007)
In the Matter of B.M., A Juvenile.
No. COA06-844.
Court of Appeals of North Carolina.
May 1, 2007.
Elizabeth Kennedy-Gurnee, Fayetteville, for Cumberland County Department of Social Services petitioner appellee.
Attorney Advocate Beth A. Hall, Guardian ad Litem Attorney Advocate, Fayetteville, for respondent-father appellee.
Katharine Chester for respondent-mother appellant.
Janet K. Ledbetter for respondent-father appellant.
McCULLOUGH, Judge.
Respondents appeal an adjudication and disposition order finding B.M. to be a dependent and neglected juvenile, ceasing reunification efforts and establishing the permanent plan as adoption. We remand the case for failure to enter adequate findings.
On 20 September 2004, the Cumberland County Department of Social Services ("DSS") filed a juvenile petition alleging that B.M., nine days old, was a dependent and neglected juvenile. A non-secure custody order was thereafter entered placing custody of B.M. in DSS.
After multiple continuances, hearings were held on the juvenile petition on 9 and 11 January 2006. The evidence presented at the hearing tended to show the following:
Respondents are the biological parents of B.M. At the time of B.M.'s birth, respondent-mother indicated to medical personnel that she had used cocaine prior to B.M.'s birth. Respondent-mother further admitted at the hearing to using cocaine for at least two months before B.M. was born. At the time of B.M's birth, the juvenile tested positive for cocaine. Wanda Nunnery, a DSS investigator, testified that, after the birth of B.M., she had respondent-mother sign a Safety Assessment Plan, but after learning of domestic violence between respondents, determined that she needed a more extensive plan to ensure the safety of B.M. Respondent-mother was asked to sign a subsequent safety plan in which she would agree that she and B.M. would stay at her mother's house until an investigation could be completed with regard to reported domestic violence and drug use, but respondent-mother refused to sign the Safety Assessment Plan. Due to the refusal and DSS's inability to ensure the safety of B.M., the juvenile petition was filed.
On 31 January 2006, the lower court entered an adjudication and disposition order finding and concluding that B.M was a neglected and dependent juvenile, ceasing reunification efforts and establishing the permanent plan as adoption. From this order respondents appeal.
Respondents contend on appeal that the lower court erred in failing to hold a timely hearing as required under N.C. Gen. Stat. § 7B-801 and N.C. Gen.Stat. § 7B-803. We hold that respondents have failed to show prejudice as a result of any delay.
N.C. Gen.Stat. § 7B-801 states that an adjudicatory hearing shall be held no later than 60 days from the filing of the juvenile petition unless the judge orders that it be held at a later time pursuant to N.C. Gen. Stat. § 7B-803. N.C. Gen.Stat. § 7B-801(c) (2005). Under N.C. Gen.Stat. § 7B-803 a judge may order a continuance in an abuse, neglect or dependency case "for good cause, . . . for as long as is reasonably required to receive additional evidence, reports, or assessments *646 that the court has requested, or other information needed in the best interests of the juvenile and to allow for a reasonable time for the parties to conduct expeditious discovery." N.C. Gen.Stat. § 7B-803 (2005). The statute further permits a continuance "in extraordinary circumstances when necessary for the proper administration of justice or in the best interests of the juvenile." Id.
Chapter 7B of the North Carolina General Statutes governs hearings concerning abuse, neglect and dependency and further sets forth rules and procedures for the termination of parental rights. N.C. Gen.Stat. § 7B-907 and § 7B-1109 set forth the governing rules for hearings to terminate parental rights and parallel those set forth for abuse, neglect and dependency proceedings. N.C. Gen.Stat. § 7B-907 requires a hearing on the termination of parental rights to be held within 60 days from the date of the permanency planning hearing but further allows the court to hold a hearing outside of this time limit. N.C. Gen.Stat. § 7B-907(e) (2005). N.C. Gen.Stat. § 7B-1109 further states that a hearing to terminate parental rights may be held outside of the aforementioned time period "in extraordinary circumstances" as long as the extension is in the best interests of the juvenile. N.C. Gen.Stat. § 7B-1109(a) and (d) (2005). Where the statutes applicable in the instant case are similar in nature to those governing hearings to terminate parental rights, we hold that the same analysis for determining error based on lack of timeliness should apply.
In reviewing the issue of timeliness with respect to hearings on the termination of parental rights, our Courts have held that an appellant must show prejudice resulting from the delay and that the mere passage of time alone is not enough to show prejudice. In re S.N.H. and L.J.H., 177 N.C.App. 82, 627 S.E.2d 510 (2006).
In the instant case the adjudication hearing was held outside of the time requirements set forth under the governing statute. The presiding judge entered numerous continuances between the filing of the juvenile petition and the adjudication hearing. Respondents in this case fail to show how they were prejudiced by the delay.
Further, it is important to note that a stark distinction must be drawn between the focus of hearings on the adjudication and disposition of a juvenile and hearings on the termination of parental rights. At the adjudication and dispositional stage it is the status of the juvenile that is at issue rather than the status of a parent. By determining that a juvenile is abused, neglected or dependent, the court does not alter the rights, duties and obligations of the parent but rather determines the status of the juvenile so that his or her best interests may be ascertained. Where the parental status is not at issue, it is much more difficult for respondents to show how the delay prejudiced the parties.
Moreover, there is no indication anywhere in the record that either respondent ever objected to the continuation of the matter. Therefore, the corresponding assignments of error are overruled.
Respondents further contend that the lower court erred in finding and adjudicating B.M. to be a neglected and dependent juvenile.
"The allegations in a petition alleging abuse, neglect, or dependency shall be proved by clear and convincing evidence." N.C. Gen.Stat. § 7B-805 (2005). This Court must determine "(1) whether the findings of fact are supported by `clear and convincing evidence,' and (2) whether the legal conclusions are supported by the findings of fact." In re Gleisner, 141 N.C.App. 475, 480, 539 S.E.2d 362, 365 (2000) (citations omitted). "In a non-jury neglect [and abuse] adjudication, the trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings." In re Helms, 127 N.C.App. 505, 511, 491 S.E.2d 672, 676 (1997).
N.C. Gen.Stat. § 7B-101 defines a neglected juvenile as "[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent" or "who lives in an environment injurious to the juvenile's welfare[.]" N.C. Gen.Stat. § 7B-101(15) (2005).
*647 The lower court made the following findings of fact:
8. That both the respondent mother and minor child tested positive for cocaine at the time of the minor's birth.
9. That prior to the birth of the minor child, the respondent mother indicated to medical personnel that she had used cocaine.
. . . .
11. That at the time of the minor child's birth, two of the minor's siblings [D] and [C.B.], were in the care, custody and control of CCDSS, who are the minor children of Anita [W.] and Tracy [B.]
12. That those minor children were in the care of CCDSS for approximately two years.
13. The Court relieved CCDSS of reunification and visitation efforts as to [D] and [C].
14. That the minor children remained in the care, custody and control of CCDSS due to the domestic violence between the respondent parents.
. . . .
18. That there were additional concerns regarding substance abuse issues on the part of the respondent mother.
. . . .
21. That the social worker conducted the initial home investigation with Safety Assessment Plan signed by the respondent mother upon counsel with her supervisor and obtaining full family history [a] Second Safety Assessment Plan was designed to ensure that the respondent mother and minor child would remain at the home of the maternal grandmother, to ensure the safety of the minor child.
22. That the respondent mother refused to sign the Safety Assessment Plan and refused to agree to remain in the home of the maternal grandmother.
. . . .
24. That the Court also considered the other case files for the two siblings of this minor child and the orders in those files.
25. That the domestic violence between the respondent parents is long standing and of enduring nature.
. . . .
29. That the respondent mother had in fact recently ingested cocaine prior to the birth of the minor child.
A review of the transcripts of record from the January hearings reveals that respondent-mother admitted to using cocaine for at least two months prior to the birth of B.M. and that B.M and respondent-mother did in fact test positive for cocaine at the time of B.M.'s birth. Clearly any contention that such findings are not supported is without merit. There was further testimony as to the domestic violence between respondents, respondent-mother's refusal to sign the second Safety Assessment Plan, and refusal to agree to remain in the home of the grandmother to ensure the safety of the child.
Such findings clearly support the court's conclusion that the juvenile was neglected, and therefore this assignment of error is overruled. See In re M.J.G., 168 N.C.App. 638, 647, 608 S.E.2d 813, 818 (2005).
Respondent-father further contends that the lower court erred in failing to make allegations and findings of fact "as to the respondent-appellant father" regarding the neglect and dependency of B.M. However, this contention is without merit.
Our Court has previously stated that the status of the juvenile and not the assignment of culpability is what is at issue at the adjudication and dispositional stage. In re Montgomery, 311 N.C. 101, 109, 316 S.E.2d 246, 252 (1984) ("In determining whether a child is neglected, the determinative factors are the circumstances and conditions surrounding the child, not the fault or culpability of the parent.") (emphasis added). The question this Court must look at on review is whether the court made the proper determination in making findings and conclusions as to the status of the juvenile. Therefore this assignment of error is overruled.
A dependent juvenile is defined as one "in need of assistance or placement because the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or whose parent, guardian, or custodian is unable to provide for the care or *648 supervision and lacks an appropriate alternative child care arrangement." N.C. Gen.Stat. § 7B-101(9). In determining whether a juvenile is dependent, "the trial court must address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements." In re P.M., 169 N.C.App. 423, 427, 610 S.E.2d 403, 406 (2005). Findings of fact addressing both prongs must be made before a juvenile may be adjudicated as dependent, and the court's failure to make these findings will result in reversal of the court. In re K.D., ___ N.C.App. ___, ___, 631 S.E.2d 150, 155 (2006).
A review of the adjudication and disposition order entered in the instant case reveals that the court failed to make any findings regarding the availability to the parent of alternative child care arrangements. Where previous case law makes clear that such a finding is required, we must reverse the lower court as to the finding and conclusion that B.M. is a dependent juvenile and remand for entry of findings as to the ability of the parent to provide care or supervision and the availability of alternative child care arrangements.
Where the adjudication of dependency must be reversed and remanded, this Court will not address the remaining assignments of error on appeal.
Accordingly, we remand for entry of additional findings consistent with this opinion.
Reversed and Remanded.
Judge BRYANT concurs.
Judge LEVINSON concurs in result with separate opinion.
LEVINSON, Judge concurring in the result.
I respectfully disagree with the majority opinion's extension of this Court's "prejudice" line of cases that address the untimely entry of orders in juvenile cases to circumstances where an adjudication hearing on a petition alleging neglect and dependency is not held within the time limits established by N.C. Gen.Stat. § 7B-801(c)(2005)(60 days between petition and hearing date unless continued pursuant to the terms set forth in N.C.G.S. § 7B-803(2005)). I recently expressed my disagreement with this Court's current line of cases that utilize generalized, vague notions of "prejudice" to evaluate errors as regards the untimely entry of juvenile court orders. In re J.N.S., ___ N.C.App. ___, 637 S.E.2d 914 (2006)(Levinson, Judge concurring).
Here, respondents do not set forth an argument on appeal that the trial court's orders as regards the continuances pursuant to G.S. § 7B-803 were erroneous. Because the trial court is authorized to continue the hearing on petitions alleging abuse, neglect and dependency beyond sixty (60) days for "good cause," it is only logical that the correctness of its decisions on the continuances is what this Court ought to evaluate. Where the trial court errs by ordering a continuance of the hearing in violation of G.S. § 7B-803, this Court could then determine whether the error impacted the outcome of the hearing the type of appellate review we universally employ.
Respondents assert "prejudice" arising from the delay in reaching the adjudication particularly that they were prevented from making an argument that the child was not neglected sooner, and that everyone was "confused" about the relevant period to evaluate the alleged neglect and dependency. These observations by respondents bear no relationship whatsoever to the validity of the ultimate outcome. Indeed, respondents do not assert that the delay impacted the ultimate legal outcome, and the record on appeal shows little or nothing about why the trial court, on numerous occasions, continued the hearing on the petition. The record is, in fact, devoid of any objections by respondents to the continuances; any motions or actions by respondents during the period of delay to press the trial court to adjudicate the petition; or any suggestion that either respondent sought the assistance of this Court by means of a writ of mandamus to direct the trial court to hold a hearing sooner.
The current "prejudice" analysis this Court purports to utilize where statutory deadlines in the Juvenile Code are not met has no statutory foundation and is legally *649 unsound. See J.N.S., supra. Because the "prejudice" line of cases should not be extended to circumstances where the adjudication hearing is held more than sixty (60) days after the petition is filed in violation of G.S. § 7B-801(c), and because there is no supported challenge on appeal to the continuances ordered by the trial court pursuant to G.S. § 7B-803, respondents' assignment of error related to the delay between the filing of the petition and the hearing date should be rejected.