IN THE MATTER OF: J.J.R.
No. COA09-689
Court of Appeals North Carolina.
Filed: November 3, 2009
This case not for publication
Wake County Human Services Office, by Scott W. Warren, Roger A. Askew and Mary Elizabeth Smerko, for Petitioner-Appellee.
Joyce L. Terres, for Respondent-Appellant Mother.
Susan F. Vick, for Guardian ad Litem.
BEASLEY, Judge.
Respondent appeals from an order adjudicating J.J.R. neglected. We affirm.
On 17 December 2008, Wake County Human Services (WCHS) filed a petition alleging that J.J.R. was neglected in that he was "not receiving proper care and supervision by his parents." In July 2008, WCHS received a "Request for assist" from Wayne County Department of Social Services (DSS) regarding J.J.R. due to Respondent moving to Wake County and leaving the juvenile behind in Goldsboro, North Carolina. DSS stated that Respondent had discharged J.J.R. from her home in January 2008 because she believed he was not following her house rules. DSS alleged that J.J.R. began living with paternal relatives, as well as "out in the streets," and had been charged with possession of marijuana. The charges were subsequently transferred to Wake County when he eventually moved there after Respondent made contact with WCHS.
On 11 August 2008, DSS received a report after Respondent again forced J.J.R. to leave her home. J.J.R. stated "that his mother doesn't want him or care about him and that he basically has raised himself since he was 9 years old." Respondent stated to WCHS that J.J.R., who was seventeen, was "old enough to care for himself and if he could not abide by her rules, then he could not stay in the home." DSS claimed that Respondent was unwilling to make a plan of care for J.J.R, and he was placed in Wrenn House. However, on 17 August 2008, Respondent subsequently refused to sign documents consenting to the placement and she removed J.J.R. from Wrenn House.
On 12 September 2008, Respondent requested that DSS remove J.J.R. from her home. Respondent allegedly stated that "the juvenile was not going to live in her home and not follow her rules." Respondent signed a voluntary placement agreement and J.J.R. was admitted to Wake House. J.J.R. remained at Wake House until 2 December 2008, during which time Respondent attended only two meetings. On 3 December 2008, after Respondent became upset about a letter from Child Support Enforcement informing Respondent that she was required to pay child support for J.J.R., Respondent removed J.J.R. from Wake House. WCHS stated that it attempted to meet with Respondent to discuss J.J.R.'s transition back into her home, but Respondent refused.
On 7 December 2008, DSS received a call from the Raleigh Police Department in response to a domestic violence incident at Respondent's home. The incident report stated that Respondent threw J.J.R.'s clothes out of her house, cursed at J.J.R., and refused to care for J.J.R. The report indicated that Respondent wanted J.J.R. removed from her home. Accordingly, J.J.R. returned to Wake House. On 9 December 2008, at a Team Decision Meeting, J.J.R. "expressed that he didn't think he could live with his mother and requested a foster placement." Respondent reportedly refused to attend the meeting and told the social worker to "do what she needed to do." Accordingly, DSS obtained custody of J.J.R. by non-secure custody order. [R. pp. 3-5, 7-8]
An adjudicatory hearing was held on 3 and 4 February 2009. On 3 March 2009, the trial court entered an order adjudicating J.J.R. neglected. The court ordered that custody of J.J.R. remain with WCHS. Respondent appeals.
Respondent first argues that the trial court erred at the adjudication hearing by relying on assertions not alleged in the petition. Respondent asserts that DSS did not allege that Respondent did not secure childcare for J.J.R. for times when Respondent was working. Respondent further asserts that this lack of notice did not give her an opportunity to prepare a defense. We disagree.
Pursuant to N.C. Gen. Stat. §7B-402(a), a petition alleging abuse, neglect or dependency "shall contain the name, date of birth, address of the juvenile, the name and last known address of the juvenile's parent, guardian, or custodian, and allegations of facts sufficient to invoke jurisdiction over the juvenile." N.C. Gen. Stat. §7B-402(a)(2007) (emphasis added). This Court has recognized that the "`allegations in a petition'" may include specific factual allegations attached to a form petition for support." In re D.C., 183 N.C. App. 344, 350, 44 S.E.2d 640, 653 (2007). The focus of a juvenile proceeding is the child's status, not the culpability of the named respondent. In re B.M., 183 N.C. App. 84, 90, 643 S.E.2d 644, 647, 643 S.E.2d 644, 647 (2007)(citing In re Montgomery, 311 N.C. 101, 109, 316 S.E.2d 246, 252 (1984)).
Here, the petition alleged that J.J.R. was neglected in that he did not receive proper care and supervision from Respondent. Additionally, DSS alleged several specific instances in support of its allegation, namely, that J.J.R. had been expelled from Respondent's home on multiple occasions. We conclude that the allegations in the petition were sufficient to invoke the jurisdiction of the court and put Respondent on notice that DSS alleged neglect of J.J.R. in its petition and such evidence would be offered at the adjudication hearing. Cf. In re Hardesty, 150 N.C. App. 380, 384, 563 S.E.2d 79, 82 (2002)("While there is no requirement that the factual allegations [in a petition to terminate parental rights] be exhaustive or extensive, they must put a party on notice as to what acts, omissions, or conditions are at issue."). Accordingly, we overrule Respondent's first assignment of error.
Respondent next argues that adjudicatory findings of fact numbers 7, 8, 10, 11, 12, 15, 19 and 26 were not supported by competent evidence.
"Allegations of neglect must be proven by clear and convincing evidence. In a non-jury neglect adjudication, the trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings." In re Helms, 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997)(citations omitted).
In finding of fact number 7, the trial court found "[t]hat in January 2008, the mother would not allow the minor child to live in her home due to the child's behavior and failure to follow her house rules." In finding of fact number 8, the trial court found that:
8. The minor child began living on his own outside of the home, at times with friends or with some paternal relatives and most of the time he was out in the streets living place to place, sleeping on porches [or] on the trunks of cars. He and his mother would have sporadic phone contact, but the mother would not allow him to come home. There were occasions when the mother picked up J.J.R. for various reasons, and then dropped him back off at inappropriate places outside of his home.
(Emphasis added). Respondent disputes the trial court's findings of fact that she "would not allow" J.J.R. to live in her home. Respondent contends that the trial court improperly weighed J.J.R.'s testimony without reliable corroboration of the veracity of J.J.R's testimony. We are not persuaded. In the instant case, J.J.R. testified that "I was told that if I couldn't abide by her rules, then I was not allowed there." It is the "judge's duty to weigh and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn therefrom." In re Whisnant, 71 N.C. App. 439, 441, 322 S.E.2d 434, 435 (1984)(citation omitted). Thus, the trial court is permitted to give greater weight to the juvenile's testimony and not find Respondent's testimony credible, without corroboration of J.J.R's claims.
In finding of fact number 10, the trial court found "[t]hat the minor child did not attend school from January, 2008 until the end of the semester." Respondent concedes that in January 2008, the juvenile did not attend school for a couple of weeks. However, Respondent claims that J.J.R. did return to school, dropped out of school in April 2008, but she subsequently enrolled him in community college in May 2008. Thus, Respondent argues that the court's findings that J.J.R. was absent from school during the entire period of time cited in the finding of fact is in error. We agree. Respondent's testimony supports her contention on appeal. J.J.R. testified about his school attendance that "I would go sometimes but I wouldn't go a lot because I had no clothes. I had to wear the same clothes every day, so, you know, I just didn't go." We conclude that while J.J.R. did not regularly attend school during the relevant period of time, the evidence does not support a finding that he did not attend school at all during this period of time.
Respondent next challenges that part of finding of fact number 11 which states that "[t]he minor child remained in Wayne County without an appropriate place to live and was told that he could not come to Raleigh to be with [respondent-mother]." Respondent claims that the evidence demonstrated that she "desired for her son to move with her to Raleigh." Respondent again asserts that DSS failed to present contradictory evidence other than J.J.R's statements. We find Respondent's argument unpersuasive. At the hearing, J.J.R. testified that when he asked Respondent if he could come back home, "her answer would be no because she doesn't think that I'm ready to abide by her rules." In determining the juvenile's credibility and weight of the evidence, the trial court could properly rely on J.J.R.'s testimony in making its finding of fact. In re Whisnant, 71 N.C. App. at 441, 322 S.E.2d at 435 (citation omitted).
In finding of fact number 12, the trial court found:
When contacted by WCHS, the mother indicated that [J.J.R.] would not follow her rules and was old enough to care for himself. The mother made it clear that if he could not follow the rules of her home, he was not welcome there. She was not willing to make a plan for [J.J.R.'s] care.
Respondent contends that the trial court's finding "is not an accurate account of the evidence." Respondent testified that, when contacted by WCHS, she told a social worker that J.J.R. was old enough to take care of himself. However, Respondent explained at the hearing that she was referring to the fact that the juvenile was old enough to take care of himself alone in her home while she was at work. DSS presented no evidence to contradict Respondent's testimony. Id. (citation omitted).
At the hearing, the WCHS social worker testified:
I asked her could she make [J.J.R.] come back home, or if she said no, would she be able to make care plans for [J.J.R.]. She said at the time, "No. If he can't follow my rules and regulations, he can't come back to the house." At that time I told her that if she could notwas not willing or able to make care plans for herthat Wake County would have to make care plans for [J.J.R.]. She said okay.
Moreover, after J.J.R. returned to Wake House, the social worker attempted to arrange a Team Decision Meeting and asked Respondent to attend. The social worker testified that Respondent's response was: "she was not interested in any more `blank blank' meetings with Wake County. Do what you want to do with him." We conclude that the trial court did not err by finding that the Respondent, by her conduct and her remarks, believed that J.J.R. was of age to care for himself.
In finding of fact number 15, the trial court found "[t]hat on September 12, 2008, the mother sought WCHS assistance with J.J.R. and asked that he be removed from her home." The finding of fact was based on testimony from the WCHS social worker that: "there was email from Intake stating that Mom had been in the office and Mom was asking for services for [J.J.R.], and she was asking to place [J.J.R.]." Respondent asserts that the social worker's testimony was inadmissible hearsay evidence. However, because Respondent failed to object to the introduction of the hearsay evidence at the hearing, this argument has been waived. See N.C.R. App. P. 10(b)(1); In re Ivey, 156 N.C. App. 398, 576 S.E.2d 386 (2003).
In finding of fact number 19, the trial court found that in December 2008, Respondent and J.J.R. had a dispute in which the Raleigh Police Department was called to intervene. The trial court found that Respondent "told the police that she was assaulted by J.J.R., that she was tired of his behavior, wanted him to go to jail, and for the [S]tate to take custody of him." Respondent asserts that there was no testimony that she wanted the State to take custody of her son. We disagree. Respondent's statement could be interpreted that she desired for J.J.R. to be transported to jail or that she desired for DSS to assume custody of J.J.R. However, "[t]he trial judge determines the weight to be given the testimony and reasonable inferences to be drawn therefrom. If a different inference may be drawn from the evidence, he alone determines which inferences to draw and which to reject." In re Hughes, 74 N.C. App. 751, 759, 330 S.E.2d 213, 218 (citation omitted) (emphasis added). Because "[t]he trial court is not required . . . [to] state every option it considered," we overruled this assignment of error. In re J.A.A., 175 N.C. App. 66, 75, 623 S.E.2d 45, 51 (2005) (citation omitted).
In finding of fact number 26, the trial court found "[t]hat the mother failed to provide proper care and supervision of her minor child and placed the child at risk of harm." Respondent argues that this is a conclusory statement, not a finding of fact, and should have been denominated as a conclusion of law. However, even assuming arguendo that the trial court erred in labeling this statement as a finding of fact, it was harmless error. "`[I]f [a] finding of fact is essentially a conclusion of law . . . it will be treated as a conclusion of law which is reviewable on appeal.'" In re M.R.D.C., 166 N.C. App. 693, 697, 603 S.E.2d 890, 893 (2004) (quoting Smith v. Beaufort County Hosp. Ass'n, 141 N.C. App. 203, 214, 540 S.E.2d 775, 782 (2000)) (internal quotations omitted).
Respondent finally argues that the trial court erred by adjudicating J.J.R. neglected.
After careful review of the record, briefs and contentions of the parties, we disagree. In an abuse, neglect and dependency case, review is limited to the issue of whether the conclusion is supported by adequate findings of fact. In re Helms, 127 N.C. App. at 511, 491 S.E.2d at 676. "Neglected juvenile" is defined in N.C. Gen. Stat. § 7B-101(15) as:
[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.
N.C. Gen. Stat. § 7B-101(15) (2007). Section 7B-101(15) affords "the trial court some discretion in determining whether children are at risk for a particular kind of harm given their age and the environment in which they reside." In re McLean, 135 N.C. App. 387, 395, 521 S.E.2d 121, 126 (1999).
In addition to the findings discussed previously herein, the trial court made the following findings of fact that are not challenged by Respondent on appeal:
13. On August 14, 2008, plans were made to place [J.J.R.] at the Wrenn House in Raleigh, NC, with the understanding the mother would need to sign consent papers and secure a physical for [J.J.R.] within 72 hours.
14. That the mother did not follow through with signing the consent papers and removed [J.J.R.] from Wrenn House on August 17, 2008. She testified that the minor child wanted to come home, and that she could best plan and make decisions for the child.
. . . .
16. That the mother signed a Voluntary Placement Agreement on September 22, 2008 and [J.J.R.] was admitted to Wake House, a plan being developed for him to have psychological testing and any needed residential treatment. He remained at Wake House from September 22, 2008, to December 2, 2008.
17. That while her son was at [Wake] House, the mother attended only 2 treatment team meetings and had no contact with her minor child.
18. That on December 3, 2008, the mother discharged [J.J.R.] from Wake House. The mother indicated that she had received a letter from Child Support Enforcement and was upset at the request to report to them about paying child support for [J.J.R.] Upon learning that the mother wanted [J.J.R.] discharged from Wake House, WCHS tried to set up a Child and Family team meeting to discuss a transition of the child back into the home, but the mother refused to attend.
In finding of fact number 19, the trial court recounted an incident occurring on 7 December 2008 between Respondent and J.J.R. in which the police were called and Respondent requested that the juvenile be taken to jail. Following the incident, J.J.R. returned to Wake House. The trial court found that after J.J.R. returned to Wake House:
23. That on December 9, 2008, at a [Team Decision Meeting] held to develop a safety plan, the team decided that WCHS [should] file a petition to assume custody. The mother was invited to attend this TDM, but told the worker that she could "do what she needed to do," and she refused to attend.
Finally, the trial court found as fact:
25. That since receiving the "assist request" from Wayne County, in July, 2008, WCHS worked with the mother to prevent the removal of the child from her care by arranging for a referral to [] Community Support Services, for out-of-home placement through the Voluntary Placement Agreement, financial support in the form of a clothing voucher for the minor's admittance to Wake House, holding weekly treatment team meetings, applying for Medicaid for [J.J.R.,] providing transportation for [J.J.R.] to attend school and work, and arranging for mental health counseling for [J.J.R.] Prior to the filing of the petition, Wake County Human Services made reasonable efforts aimed at preventing the removal of the child from the mother. The mother failed to present an appropriate plan of care for her minor child.
The uncontested findings of fact, together with the findings affirmed above, establish, that: (1) Respondent would not allow J.J.R. to live in her home if he would not follow her rules; (2) Respondent failed to provide for his proper care or supervision during those periods of time when J.J.R. was not allowed to live in her home; (3) Respondent failed to appropriately plan for his care upon his entry, residence, and/or exit from Wrenn House or Wake House; (4) Respondent visited J.J.R. sporadically while he was in Wake House; and (5) that her failures to provide J.J.R. with proper care or supervision placed him at risk of harm. See In re Safriet, 112 N.C. App. 747, 752, 436 S.E.2d 898, 901-02 (1993) (To sustain an adjudication of neglect, this Court has stated that the alleged conditions must cause the juvenile some physical, mental, or emotional impairment, or create a substantial risk of such impairment). Accordingly, we conclude the trial court did not err by adjudicating J.J.R. a neglected juvenile.
We note that J.J.R. has now reached the age of 18-years-old. While this Court's decision may be moot as to J.J.R., the trial court's adjudication may have legal consequences as to any of Respondent's other children. In re A.K., 360 N.C. 449, 628 S.E.2d 753 (2006).
Affirmed.
Chief Judge MARTIN and Judge ELMORE concur.
Report per Rule 30(e).