IN THE SUPREME COURT OF NORTH CAROLINA

No. 27A20

Filed 11 December 2020

IN THE MATTER OF: K.D.C. and A.N.C.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) and on writ of certiorari pursuant to N.C.G.S. § 7A-32(b) from orders entered on 1 October 2019 by Judge William F. Brooks in District Court, Wilkes County. This matter was calendared in the Supreme Court on 23 November 2020 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

> *Vannoy, Colvard, Triplett & Vannoy, P.L.L.C., by Daniel S. Johnson, for petitioner-appellee Wilkes County Department of Social Services.*
>
> *Erica M. Hicks for appellee Guardian ad Litem.*
>
> *Anné C. Wright for respondent-appellant mother.*

MORGAN, Justice.

Respondent-mother appeals from the trial court's orders terminating respondent-mother's parental rights to her children K.D.C. and A.N.C. ("Katie" and "Anna").[1] After careful review, we reverse.

---

[1] Pseudonyms are used in this opinion to protect the juveniles' identities and for ease of reading.

*Factual Background and Procedural History*

On 15 January 2017, the Wilkes County Department of Social Services (DSS) received a report that Katie and Anna were living in an injurious environment due to improper care and supervision, moral turpitude, and substance abuse. At the time, Katie and Anna were living with their father and with K.S., their older brother. Respondent-mother was incarcerated on drug trafficking charges with a projected release date in 2020. A social worker went to the juveniles' home to investigate the report and observed track marks on K.S.'s arms. A drug screen administered to K.S. on the day of the social worker's investigative visit to the residence was positive for methamphetamine and marijuana. The father agreed to a safety plan to ensure that Katie and Anna had sober caretakers, and K.S. agreed to refrain from providing care for, or allowing drugs around, his juvenile siblings. However, shortly thereafter, both the father and K.S. tested positive for the presence of methamphetamine upon their submission of drug screens to DSS. A social worker requested a safety placement for the juveniles, but the father was unable to identify family or friends that could qualify for kinship placements.

On 7 March 2017, DSS obtained non-secure custody of the juveniles and filed petitions alleging that Katie and Anna were neglected. On 24 April 2017, the trial court adjudicated Katie and Anna as neglected juveniles after the parties to the action stipulated to the allegations in the petition. The trial court ordered that custody of

the juveniles remain with DSS and set the permanent plan as reunification, with a secondary plan of custody with an approved caretaker.

Following a review hearing held on 21 May 2018, the trial court entered an order in which it found that the father had completed his case plan, and that it was appropriate to begin a trial placement of Katie, along with her older sibling B.C.,[2] with the father. Katie and B.C. were placed with the father in June 2018. The trial placement with the father was ceased, however, after DSS received a report alleging improper supervision and discipline by the father. Upon investigation of the report, DSS determined that B.C. had taken a car on a "joy ride" and had wrecked the vehicle. The father allegedly punched B.C. in the lip after the father learned of these events. Katie and B.C. were removed from the trial placement with the father and placed in foster care.

Following the disrupted trial placement, the father regressed in his behavior. The father tested positive for cocaine on 23 July 2018, did not appear for scheduled drug screens in August 2018, and admitted that he had started drinking alcohol and using cocaine. Additionally, DSS received a report that the father had inappropriately touched Anna and that the report was being investigated by the Wilkes County Sheriff's Department. DSS requested that the father complete an updated case plan,

---

[2] No petition to terminate respondent-mother's parental rights, or order which terminates her parental rights to B.C., appears in the record. Respondent-mother's parental rights to B.C. therefore are not a subject of this appeal.

but he failed to do so and fell out of contact with DSS. In December 2018, the father was charged with drug-related offenses. With these developments, in an order entered on 15 January 2019, the trial court changed the permanent plan for the juveniles to adoption, with a secondary plan of custody. DSS was relieved of further reunification efforts.

On 23 April 2019, DSS filed petitions to terminate the parental rights of both respondent-mother and the father to Katie and Anna. DSS alleged that grounds existed to terminate both parent's parental rights on the grounds of neglect, failure to make reasonable progress, failure to pay support for the children, and dependency. N.C.G.S. § 7B-1111(a)(1)–(3), (6) (2019). DSS additionally alleged that grounds existed to terminate the father's parental rights due to abandonment. N.C.G.S. § 7B-1111(a)(7) (2019). On 1 October 2019, the trial court entered orders in which it determined that grounds existed to terminate respondent-mother's parental rights pursuant to N.C.G.S. § 7B-1111(a)(1), (2), and (6). The trial court further concluded that it was in the juveniles' best interests that respondent-mother's parental rights be terminated. Accordingly, the trial court terminated the parental rights of respondent-mother to Katie and Anna.[3]

---

[3] The trial court's orders also terminated the father's parental rights to Katie and Anna, but he did not appeal and therefore is not a party to the proceedings currently before this Court.

On 28 October 2019, respondent-mother gave written notice of appeal from the order terminating her parental rights to Katie. The record on appeal does not include proof that respondent-mother's notice of appeal was served on the other parties, as required by N.C. R. App. P. 3.1(b). However, neither DSS nor the guardian ad litem objected to this lack of service, and thus, any issue about the deficiency of service has been waived. *See Hale v. Afro-Am. Arts Int'l, Inc.*, 335 N.C. 231, 232, 436 S.E.2d 588, 589 (1993) (stating that "a party upon whom service of notice of appeal is required may waive the failure of service by not raising the issue by motion or otherwise and by participating without objection in the appeal").

On 17 February 2020, respondent-mother filed a petition for writ of certiorari, seeking review of the order terminating her parental rights to Anna. Respondent-mother attached an affidavit to the petition, explaining that her trial counsel sent her notices of appeal concerning both Katie and Anna and instructed respondent-mother to sign them and then mail them to the Wilkes County Clerk of Court for filing purposes. Respondent-mother inadvertently mailed only the notice of appeal regarding Katie, which was timely filed. A notice of appeal concerning Anna was subsequently filed, but it was accomplished after the deadline for giving notice of appeal. On 1 April 2020, we allowed respondent-mother's petition for writ of certiorari as to Anna. Accordingly, we shall address the merits of respondent-mother's appeal as to both juveniles.

*Analysis*

"Our Juvenile Code provides for a two-step process for termination of parental rights proceedings consisting of an adjudicatory stage and a dispositional stage." *In re Z.A.M.*, 374 N.C. 88, 94, 839 S.E.2d 792, 796–97 (2020) (citing N.C.G.S. §§ 7B-1109, -1110 (2019)). "At the adjudicatory stage, the petitioner bears the burden of proving by 'clear, cogent, and convincing evidence' the existence of one or more grounds for termination under section 7B-1111(a) of the General Statutes." *In re A.U.D.*, 373 N.C. 3, 5–6, 832 S.E.2d 698, 700 (2019) (quoting N.C.G.S. § 7B-1109(f) (2019)). We review a district court's adjudication of grounds to terminate parental rights "to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re Montgomery*, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984). "The trial court's conclusions of law are reviewable de novo on appeal." *In re C.B.C.*, 373 N.C. 16, 19, 832 S.E.2d 692, 695 (2019).

In this case, the trial court determined that grounds existed to terminate respondent-mother's parental rights based on neglect, failure to make reasonable progress, and dependency. N.C.G.S. § 7B-1111(a)(1), (2), (6). To support its conclusion that these circumstances existed to terminate respondent-mother's parental rights pursuant to these statutory grounds, the trial court found as fact that Katie and Anna were previously adjudicated as neglected in April 2017.[4] The trial court further found

---

[4] We note that the trial court entered separate termination orders regarding the juveniles Katie and Anna. The findings of fact and conclusions of law supporting the trial

that respondent-mother entered into a case plan which required her to (1) complete parenting classes, (2) obtain and maintain employment and housing upon her release from custody, (3) complete a mental health assessment and follow all recommendations, and (4) complete a mental health and substance abuse assessment and follow all treatment recommendations. The trial court also found the following facts:

> 8. The Respondent-Mother was incarcerated in the North Carolina Department of Corrections at the time DSS began its investigation. She was sentenced for drug trafficking in 2015. The Respondent-Mother is serving a seven-year, nine[-]month sentence with a projected release date of December 25, 2020.
>
> . . . .
>
> 12. The Respondent-Mother did not complete parenting classes and did not complete her substance abuse assessment or mental health assessment. The Respondent-Mother did complete a "Mothering" class on April 25, 2019. She also completed an anger management class in October 2017 and a grief recovery class in August 2018.
>
> . . . .
>
> 21. The Respondent-Mother does not have a plan for employment or housing upon her anticipated release from prison. She believes she may be able to obtain employment at Tyson Foods in Wilkesboro.
>
> . . . .

court's adjudications are essentially identical in each termination order. In order to facilitate our discussion of the relevant matters pertaining to the adjudication of grounds involving the two juveniles, we shall refer to the findings of fact and conclusions of law as enumerated in the trial court's termination order entered in Katie's case.

24. Both Respondents have neglected the minor child. The Respondent-Mother has not provided any care for the minor child since 2015. There is a significant possibility of future neglect by the Respondents.

25. . . . . The Respondent-Mother did not complete her parenting classes. The Respondent-Mother did not provide any verification that she completed her mental health and substance abuse assessments. Although the Respondent-Mother was incarcerated, she had the ability to complete these requirements of her case plan but failed to do so. . . . .

. . . .

27. Neither Respondent has the ability to provide for the proper care and supervision of the minor child due to their incarceration. The Respondents' incapability will continue for the foreseeable future in light of their incarceration. The Respondent-Mother will not be released from custody for over a year. She does not have appropriate plans for housing or employment.

"Findings of fact not challenged by respondent are deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407, 831 S.E.2d 54, 58 (2019).

Respondent-mother challenges two of the trial court's findings of fact—Findings 12 and 25—as being unsupported by the evidence. Regarding Finding of Fact 12, respondent-mother contends that the portion of the finding that she "did not complete parenting classes . . . or a mental health assessment" is not supported by the evidence and should be stricken. Similarly, as to Finding of Fact 25, respondent-mother asserts that the portion of this finding that she failed to complete a parenting

class or to document that she completed her required mental health or substance abuse assessments is incorrect; more specifically, she argues that while she did not provide verification of completion of a mental health or substance abuse assessment, there was no evidence presented that she had the ability to participate in a substance abuse assessment while incarcerated or to provide verification of a completed mental health assessment. We agree with respondent-mother that portions of the trial court's Findings 12 and 25 are not supported by clear, cogent, and convincing evidence.

First, with regard to the requirement that respondent-mother must complete parenting classes, we do find that there is clear, cogent, and convincing evidence to support the trial court's finding that respondent-mother did not complete parenting classes. A supervisory social worker with DSS testified that respondent-mother did not complete parenting classes while incarcerated, although respondent-mother had indicated to the social worker that parenting classes were available to respondent-mother in July 2017, shortly after respondent-mother signed her case plan. Since respondent-mother testified that she completed a "Mothering" class, the trial court could reasonably infer from the evidence presented that parenting classes were available, and that the "Mothering" class did not satisfy the requirement that she complete parenting classes. *See In re D.L.W.*, 368 N.C. 835, 843, 788 S.E.2d 162, 167–68 (2016) (indicating that it is the trial judge's duty to consider all the evidence and pass upon the credibility of the witnesses, and to determine the reasonable inferences to be drawn therefrom); *see also Scott v. Scott,* 157 N.C. App. 382, 388, 579 S.E.2d

431, 435 (2003) (indicating that when the trial court sits as fact-finder, it is the sole judge of the credibility and weight to be given to the evidence, and that it is not the role of an appellate court to substitute its judgment for that of the trial court).

Second, we agree with respondent-mother that there was insufficient evidence to support the trial court's finding of fact that respondent-mother failed to obtain a substance abuse assessment or a mental health assessment, or that she had the ability to complete these aspects of her case plan. The supervisory social worker was asked whether respondent-mother had been "able to receive any type of treatment for any sort of mental health issues or substance abuse issues while she's been incarcerated." The social worker responded that she had received a letter from respondent-mother indicating that respondent-mother had completed a mental health assessment, but the social worker never received verification from the respondent-mother of its completion. The social worker was silent concerning respondent-mother's attainment of a substance abuse assessment or treatment, and the social worker testified that the social worker did not seek verification from the prison system regarding what type of mental health or substance abuse assessments respondent-mother may have received. Although petitioner DSS argues that there was no evidence that respondent-mother completed a substance abuse assessment and that she did not provide verification that she completed either a mental health assessment or a substance abuse assessment, nonetheless the burden was on DSS to prove respondent-mother's non-compliance with her case plan, and was not on

respondent-mother to prove such compliance. *See* N.C.G.S. § 7B-1109(f) (2019) ("The burden in [an adjudicatory hearing on termination] shall be upon the petitioner or movant and all findings of fact shall be based on clear, cogent, and convincing evidence."). Thus, we conclude that the trial court's findings of fact that respondent-mother failed to complete her mental health and substance abuse assessments, and that respondent-mother had the ability to fulfill these requirements, are not supported by clear, cogent, and convincing evidence. Therefore, we disregard these portions of Findings of Fact 12 and 25. *See In re J.M.J.-J.*, 374 N.C. 553, 559, 843 S.E.2d 94, 101 (2020) (indicating that findings of fact not supported by clear, cogent, and convincing evidence will be disregarded).

Respondent-mother next contends that the trial court's findings of fact do not support its conclusions of law that grounds existed to terminate her parental rights. We begin our analysis of this issue with consideration of whether grounds of neglect existed to terminate respondent-mother's parental rights pursuant to N.C.G.S. § 7B-1111(a)(1).

A trial court may terminate parental rights upon a finding that the parent has neglected the juvenile within the meaning of N.C.G.S. § 7B-101. N.C.G.S. § 7B-1111(a)(1). A neglected juvenile is defined, in pertinent part, as a juvenile "whose parent, guardian, custodian, or caretaker does not provide proper care, supervision, or discipline; . . . or who lives in an environment injurious to the juvenile's welfare." N.C.G.S. § 7B-101(15) (2019).

> Termination of parental rights based upon this statutory
> ground requires a showing of neglect at the time of the
> termination hearing or, if the child has been separated
> from the parent for a long period of time, there must be a
> showing of . . . a likelihood of future neglect by the parent.

*In re D.L.W.*, 368 N.C. at 843, 788 S.E.2d at 167 (citing *In re Ballard*, 311 N.C. 708,

713–15, 319 S.E.2d 227, 231–32 (1984)). "When determining whether such future

neglect is likely, the district court must consider evidence of changed circumstances

occurring between the period of past neglect and the time of the termination hearing."

*In re Z.V.A.*, 373 N.C. 207, 212, 835 S.E.2d 425, 430 (2019) (citing *In re Ballard*, 311

N.C. at 715, 319 S.E.2d at 232).

Katie and Anna were previously adjudicated to be neglected juveniles.

Respondent-mother, however, has been incarcerated throughout DSS's involvement

in this case. This Court has stated:

> A parent's incarceration may be relevant to the
> determination of whether parental rights should be
> terminated, but our precedents are quite clear—and
> remain in full force—that incarceration, standing alone, is
> neither a sword nor a shield in a termination of parental
> rights decision. Thus, respondent's incarceration, by itself,
> cannot serve as clear, cogent, and convincing evidence of
> neglect. Instead, the extent to which a parent's
> incarceration . . . support[s] a finding of neglect depends
> upon an analysis of the relevant facts and circumstances,
> including the length of the parent's incarceration.

*In re K.N.*, 373 N.C. 274, 282–83, 837 S.E.2d 861, 867–68 (2020) (extraneity omitted).

Here, the trial court found that respondent-mother had the ability to comply

with her case plan, despite respondent-mother's incarceration, with regard to

obtaining mental health and substance abuse assessments and following all treatment recommendations. As previously discussed, however, we have concluded that these findings were not supported by clear, cogent, and convincing evidence, and we have disregarded them in our analysis pursuant to our cited precedent. While we note the trial court's finding that respondent-mother failed to complete a parenting class as required by her case plan, we also acknowledge that respondent-mother completed a "Mothering" class, which appears to be at least a plausible attempt by respondent-mother to complete her case plan and to improve her parenting skills. In addition to the "Mothering" class, respondent-mother completed anger management and grief recovery classes. The trial court further found that respondent-mother had not secured stable housing or employment in anticipation of her release from incarceration. In light of the fact that the termination of parental rights hearing was held fifteen months prior to respondent-mother's release from incarceration, respondent-mother's inability to secure employment and housing so far in advance is difficult to consider justly as a failure to comply with her case plan. Lastly, the trial court found that respondent-mother maintained regular contact with Katie and Anna. On these facts, this Court concludes that the trial court erred in deciding that there would be a likelihood of future neglect by respondent-mother as the parent of Katie and Anna. Accordingly, we hold that the trial court erred in its determination that grounds existed pursuant to N.C.G.S. § 7B-1111(a)(1) to terminate respondent-mother's parental rights.

Secondly, we examine whether the trial court properly concluded that grounds existed to terminate respondent-mother's parental rights based on her failure to make reasonable progress. Pursuant to N.C.G.S. § 7B-1111(a)(2), a trial court may terminate parental rights if "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C.G.S. § 7B-1111(a)(2). "[A] finding that a parent acted 'willfully' for purposes of N.C.G.S. § 7B-1111(a)(2) 'does not require a showing of fault by the parent.' " *In re J.S.*, 374 N.C. 811, 815, 845 S.E.2d 66, 71 (2020) (quoting *In re Oghenekevebe*, 123 N.C. App. 434, 439, 473 S.E.2d 393, 398 (1996)). "Willfulness is established when the respondent had the ability to show reasonable progress, but was unwilling to make the effort." *In re McMillon*, 143 N.C. App. 402, 410, 546 S.E.2d 169, 175, *disc. review denied*, 354 N.C. 218, 554 S.E.2d 341 (2001).

In determining whether grounds existed to terminate respondent-mother's parental rights pursuant to this statutory basis, we must consider whether respondent-mother had the ability to make reasonable progress while incarcerated. *See In re C.W.*, 182 N.C. App. 214, 226, 641 S.E.2d 725, 733 (2007) (noting that the incarceration of a parent may be considered by a trial court as it determines whether the parent has made reasonable progress toward correcting those conditions which led to the juvenile's removal). As earlier addressed, there was insufficient evidence

that respondent-mother failed to complete, or had the ability to complete, the requirements of her case plan that she obtain mental health and substance abuse assessments and follow all recommendations. We also reasoned that although respondent-mother failed to secure employment and housing in anticipation of her release from incarceration, it is overly rigid here to equate respondent-mother's inability to secure housing and employment with a failure to comply with her case plan when she is not scheduled to be free from incarceration to have a job or a residence for another fifteen months after the trial court's determination was entered on this point. The remaining requirement of respondent-mother's case plan was her completion of parenting classes. Although respondent-mother did not complete a recognized standard parenting class, we deem it to be worthy of acknowledgement, in determining whether she has failed to comply with her case plan in order for us to assess the imposition of N.C.G.S. § 7B-1111(a)(2), that she did complete a "Mothering" class.

This Court has stated that "a trial judge should refrain from finding that a parent has failed to make 'reasonable progress . . . in correcting those conditions which led to the removal of the juvenile' simply because of his or her 'failure to fully satisfy all elements of the case plan goals.' " *In re B.O.A.*, 372 N.C. 372, 385, 831 S.E.2d 305, 314 (2019) (quoting *In re J.S.L.*, 177 N.C. App. 151, 163, 628 S.E.2d 387, 394 (2006)). We have also stated while "[p]arental compliance with a judicially adopted case plan is relevant in determining whether grounds for termination exist

pursuant to N.C.G.S. § 7B-1111(a)(2)[,] . . . in order for a respondent's noncompliance with her case plan to support the termination of her parental rights, there must be a nexus between the components of the court-approved case plan with which the respondent failed to comply and the conditions which led to the child's removal from the parental home." *In re J.S.*, 374 N.C. at 815–16, 845 S.E.2d at 71 (extraneity omitted). At the same time however, "a trial court has ample authority to determine that a parent's 'extremely limited progress' in correcting the conditions leading to removal adequately supports a determination that a parent's parental rights in a particular child are subject to termination pursuant to N.C.G.S. § 7B-1111(a)(2)." *In re B.O.A.*, 372 N.C. at 385, 831 S.E.2d at 314 (quoting *In re S.N.*, 194 N.C. App. 142, 149, 669 S.E.2d 55, 60 (2008)).

Under the circumstances of this case, realizing the petitioning party's responsibility to satisfy the burden of proof in termination of parental rights cases; considering the findings of fact by the trial court that are supported by clear, cogent, and convincing evidence; and appreciating the delicate balance that must be maintained between and among our case precedent, we conclude, based on the facts and circumstances of the present case, that DSS failed to sustain its burden of proving that grounds existed pursuant to N.C.G.S. § 7B-1111(a)(2) to terminate respondent-mother's parental rights. Respondent-mother was separated from the juveniles Katie and Anna when the initial neglect petition was filed, due to respondent-mother's incarceration on drug charges. It is apparent to us that a primary component of her

case plan was obtaining a substance abuse assessment and following all treatment recommendations. As earlier discussed, due to insufficient evidence, we disregard the trial court's finding that respondent-mother failed to comply with this requirement of her case plan. Likewise, due to similar insufficient evidence, the trial court's finding that respondent-mother failed to obtain a mental health assessment is disregarded. The finding of the trial court that respondent-mother failed to secure employment and housing at a juncture fifteen months in the future after respondent-mother has satisfied her term of incarceration is too remote in time to be fairly evaluated as a case plan violation. Finally, although respondent-mother failed to complete parenting classes, her completion of a "Mothering" class is considered by us to be a sufficient attempt by respondent-mother under these facts and circumstances to comply with her case plan. As a result, we reverse the trial court's conclusion that grounds existed pursuant to N.C.G.S. § 7B-1111(a)(2) to terminate respondent-mother's parental rights.

The final ground for termination of respondent-mother's parental rights found by the trial court was dependency under N.C.G.S. § 7B-1111(a)(6). A trial court may terminate parental rights based on dependency when "the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of [N.C.G.S. §] 7B-101, and that there is a reasonable probability that the incapability will continue for the foreseeable future." N.C.G.S. § 7B-1111(a)(6). A dependent juvenile is defined as "[a] juvenile in

need of assistance or placement because (i) the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or (ii) the juvenile's parent, guardian, or custodian is unable to provide for the juvenile's care or supervision and lacks an appropriate alternative child care arrangement." N.C.G.S. § 7B-101(9) (2019). The incapability under N.C.G.S. § 7B-1111(a)(6) "may be the result of substance abuse, intellectual disability, mental illness, organic brain syndrome, or any other cause or condition that renders the parent unable or unavailable to parent the juvenile and the parent lacks an appropriate alternative child care arrangement." N.C.G.S. § 7B-1111(a)(6). "In determining whether a juvenile is dependent, 'the trial court must address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements.' " *In re B.M.*, 183 N.C. App. 84, 90, 643 S.E.2d 644, 648 (2007) (quoting *In re P.M.*, 169 N.C. App. 423, 427, 610 S.E.2d 403, 406 (2005)).

In the present case, DSS made no allegation in its petition that respondent-mother lacked an appropriate alternative child care arrangement, and the trial court did not make any findings of fact addressing the issue. DSS contends that although the trial court failed to make a specific finding of fact regarding the matter, there was no evidence in the record that would support a finding that respondent-mother had an alternative caregiver arrangement. Consistent with DSS's assertion, the guardian ad litem represents that it was undisputed that respondent-mother did not have an alternative child care arrangement. We are not persuaded due to our agreement with,

and application of, the determination of the Court of Appeals in *In re B.M.* that "[f]indings of fact addressing *both prongs must be made* before a juvenile may be adjudicated as dependent, and *the [trial] court's failure to make these findings will result in reversal of the [trial] court.*" *Id.* (emphasis added) (citing *In re K.D.*, 178 N.C. App. 322, 328, 631 S.E.2d 150, 155 (2006)). Neither DSS nor the guardian ad litem has cited any evidence presented at the termination hearing regarding whether respondent-mother possessed or suggested an alternative child care arrangement. *See* N.C.G.S. § 7B-1109(f) ("The burden in [an adjudicatory hearing on termination] shall be upon the petitioner or movant and all findings of fact shall be based on clear, cogent, and convincing evidence."). As a consequence of the lack of evidence in the record and the lack of a finding of fact by the trial court that respondent-mother lacked an appropriate alternative child care arrangement, we determine that the trial court erroneously decided that the ground of dependency was established pursuant to N.C.G.S. § 7B-1111(a)(6) to justify the termination of respondent-mother's parental rights.

## *Conclusion*

Based on this Court's determinations that the trial court erroneously found that grounds existed to terminate respondent-mother's parental rights to the juveniles Katie and Anna pursuant to N.C.G.S. § 7B-1111(a)(1), (2), and (6), and that it was in the juveniles' best interests to terminate respondent-mother's parental

rights to both of the children, the trial court's orders terminating respondent-mother's parental rights are reversed.

REVERSED.

Justice NEWBY concurring in part and dissenting in part.

Because respondent-mother is scheduled for release from prison this month, and considering the other factors discussed by the majority, I agree with much of the majority's analysis. I disagree, however, with the majority's decision to reverse the portion of the trial court's orders terminating respondent-mother's parental rights on the dependency ground. My disagreement is based on the same reasons stated in *In re K.C.T.*, No. 461A19 (N.C. Nov. 20, 2020) (Newby, J., dissenting). "While petitioners bear the burden generally to show that respondent's parental rights should be terminated, . . . the burden does not rest solely on petitioners to show that respondent offered no alternative childcare arrangement." *Id.* Respondent-mother is in the best position to show whether an alternative childcare arrangement existed. While the trial court should have made a finding of fact on whether an alternative childcare arrangement existed, failure to make this finding for the dependency ground for termination does not warrant reversal. Instead, the matter should be remanded to the trial court to make the proper finding. *See id.* Therefore, I concur in part and dissent in part.