BRYANT, Judge.
 

 Respondent-father appeals from the trial court's order following a combined adjudication, disposition, and permanency planning hearing. The order concluded that respondent-father's minor child ("Hannah")
 
 [1]
 

 was neglected and dependent, relieved DSS from its obligation to pursue reunification efforts, and awarded guardianship of Hannah to her adult half-sister. We affirm in part, reverse in part, and remand.
 

 On 4 October 2016, McDowell County Department of Social Services ("DSS") filed a juvenile petition alleging that Hannah was neglected and dependent. DSS alleged that it had previously been involved with the family on multiple occasions, due to domestic violence and substance abuse. On 24 February 2016, DSS received a report that respondent-father and Hannah's mother were involved in an argument over Hannah and her mother leaving the home. Hannah's sister came to the home in order to remove Hannah from the scene. Respondent-father and the mother were each pulling on Hannah while she was screaming and crying. Eventually, respondent-father relented, and Hannah's sister was able to leave the home with Hannah.
 

 In April 2016, the parents entered into a safety plan with DSS and Hannah was placed with her sister as a safety resource placement. Under the plan, the parents were not permitted to remove Hannah from her sister's care. The plan also required both parents to submit to clinical assessments and to submit to random drug screens and follow any recommendations. Both parents submitted drug screens in April and July 2016, of which both screens tested positive for methamphetamines.
 

 The petition was heard on 9 January 2017. After hearing testimony and reviewing other evidence, the trial court orally adjudicated Hannah a neglected juvenile. The case then moved to disposition. On 24 January 2017, the trial court entered an "Adjudication, Dispositional, 90 Day Review, & Permanency Planning Order." The written order adjudicated Hannah as neglected and dependent, awarded guardianship of Hannah to her sister, and relieved DSS of the obligation to pursue reunification efforts. Respondent-father filed timely notice of appeal.
 
 [2]
 

 _________________________
 

 On appeal, respondent-father argues that the trial court erred by (I) adjudicating Hannah a neglected and dependent juvenile; (II) awarding guardianship of Hannah to her adult sister as an initial disposition; (III) conducting a concurrent 90-day review and permanency planning hearing and establishing a secondary permanent plan of reunification; and (IV) including inconsistent provisions regarding visitation in its order.
 

 I
 

 Respondent-father argues that the trial court erred by adjudicating Hannah a neglected and dependent juvenile. We disagree that the court erred by adjudicating Hannah neglected, but agree that the court erred by adjudicating her dependent.
 

 A. Standard of Review
 

 This Court's review of an order adjudicating a juvenile neglected and dependent is limited to determining "(1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the
 legal conclusions are supported by the findings of fact."
 
 In re Pittman
 
 ,
 
 149 N.C. App. 756
 
 , 763-64,
 
 561 S.E.2d 560
 
 , 566 (2002) (citation omitted). Unchallenged findings are binding on appeal.
 
 In re C.B.
 
 ,
 
 180 N.C. App. 221
 
 , 223,
 
 636 S.E.2d 336
 
 , 337 (2006).
 

 [Moreover,] it is not
 
 per se
 
 reversible error for a trial court's fact findings to mirror the wording of a petition or other pleading prepared by a party. Instead, this Court will examine whether the record of the proceedings demonstrates that the trial court, through processes of logical reasoning, based on the evidentiary facts before it, found the ultimate facts necessary to dispose of the case. If we are confident the trial court did so, it is irrelevant whether those findings are taken verbatim from an earlier pleading.
 

 In re J.W.
 
 ,
 
 241 N.C. App. 44
 
 , 48-49,
 
 772 S.E.2d 249
 
 , 253,
 
 disc. review denied
 
 ,
 
 368 N.C. 290
 
 ,
 
 776 S.E.2d 202
 
 (2015).
 

 B. Neglect
 

 Respondent-father first contends that the trial court erred by concluding that Hannah was neglected. A neglected juvenile is defined in relevant part as
 

 [a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; ... or who lives in an environment injurious to the juvenile's welfare[.] ... In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile ... lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home.
 

 N.C. Gen. Stat. § 7B-101(15) (2015). When, as in the present case, the child has been voluntarily removed from the home prior to the filing of the petition,
 

 the court should consider "evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect. The determinative factors must be the best interests of the child and the fitness of the parent to care for the child at the time of the [adjudication] proceeding."
 

 In re K.J.D.
 
 ,
 
 203 N.C. App. 653
 
 , 660,
 
 692 S.E.2d 437
 
 , 443 (2010) (alteration in original) (quoting
 
 In re Brim
 
 ,
 
 139 N.C. App. 733
 
 , 742,
 
 535 S.E.2d 367
 
 , 372 (2000) ). Essentially, the trial court must consider "the conditions and the fitness of the parent to provide care at the time of the adjudication ...."
 
 Id
 
 .
 

 In this case, the trial court based its neglect adjudication on the facts which led to Hannah's placement with her adult sister as well as the parent's lack of progress in addressing the conditions which led to that placement. Respondent-father challenges virtually all of the trial court's findings. First, he challenges finding of fact 7, which states, in relevant part, as follows:
 

 7. [DSS] received a report screened in for neglect, concerning the parent/step-parent of [Hannah] ... involving allegations of being under the influence of drugs (substance abuse), improper discipline of the child[ ] and domestic violence. While working with the family the parents tested positive for methamphetamine and the child [was] placed in a safety resource.
 

 Respondent-father argues that this finding is invalid because it was "copied and pasted directly from the allegations contained in the petition[ ]" and was not supported by testimony at the hearing. However, the social worker specifically testified that DSS received a report on 24 February 2016 of "substance abuse and domestic violence."
 
 [3]
 
 DSS also submitted into evidence the results of both parents' drug screens, which were each positive for methamphetamine.
 

 Respondent-father challenges finding of fact 8 for similar reasons. This finding detailed four prior reports that DSS received regarding the family. At the hearing, the social worker testified that "[t]here have been four, I believe-four prior reports regarding the family. Basically, about drugs." However, the social worker did not testify about the specific
 details of these reports, and they were not received into evidence.
 Thus, the portion of finding of fact 8 which includes these details is unsupported by the evidence and must be disregarded.
 

 Respondent-father next challenges finding of fact 9, which details the 24 February 2016 incident involving the family. It states, in relevant part, as follows:
 

 9.... [DSS] received a report regarding the respondents and this child on February 24, 2016, and the allegations were that the respondent father would not allow child or mom to leave the home. He was blocking the door not letting them leave. [The sister] ..., the respondent-father's adult daughter and the sister to the child, came to the home. She had [Hannah] in her arms and the respondent father began pulling on child trying to take child away from her with child screaming and crying. The child was less than two years old and this tugging on the child could easily result in physical injury to the child. The respondent mother later tried to enter her car to leave the respondent father's home and he got into the car with mom and would not allow her to start the car. During all this law enforcement was called and did respond.
 

 At the hearing, Hannah's sister testified that she received a message from Hannah's mom indicating that respondent-father would not let her leave with Hannah. Respondent-father concedes that additional testimony also established the following: (1) when Hannah's sister arrived, she picked up Hannah and tried to take her out of the home; (2) respondent-father yelled in the sister's face and took Hannah away from her; (3) Hannah's mother and respondent-father were each pulling on Hannah, each trying to wrest her away from the other; and (4) once Hannah's mother got control of her, she gave Hannah to the sister, who left. Respondent-father is correct that some additional details in this finding were not supported by the testimony at the adjudication hearing, and consequently, we will not consider these additional details.
 

 Respondent-father also challenges the following portion of finding of fact 10: "The Court finds that [respondent-father] had visible signs of methamphetamine use, with visible scars." Respondent-father is correct that no evidence regarding the cause of his appearance was presented at the hearing. The guardian ad litem ("GAL") argues that this challenged portion of the trial court's finding was proper within the context of the trial court's ability to observe the "in-court demeanor, attitude,
 and credibility" of witnesses.
 
 In re Oghenekevebe
 
 ,
 
 123 N.C. App. 434
 
 , 441,
 
 473 S.E.2d 393
 
 , 398 (1996). However, we do not find this argument persuasive, as the determination of the cause of respondent-father's scars would require additional evidence that was not presented to the trial court. As a result, we will not consider the portion of this finding that attributes respondent-father's scars to methamphetamine use. Nonetheless, the remainder of the court's finding, including its determination that respondent-father "continued to use methamphetamine," can be properly considered as part of our review and appears to be supported by father's positive drug screens.
 

 Next, respondent-father challenges the following findings:
 

 11.... [DSS] is asking to give custody/guardianship of [Hannah] to her adult sister ... who has had care of her since April 9, 2016.
 

 14. Because of the respondents['] ongoing substance abuse and failure to appropriately progress on their case plans, ... [DSS] thinks that the (sic) without court intervention the minor child would continue to be exposed to an environment that is injurious to [her] well-being.
 

 15. DSS filed the petition because it thought the child [was] neglected and dependent and that staying in the home of the respondent mother was detrimental to the child's welfare.
 

 Respondent-father argues that these findings "state DSS's 'thoughts' or motivation for filing the petition" and were not supported by any evidence at the hearing. However, the social worker specifically testified that DSS filed the petition because Hannah's parents failed to address their substance abuse issues. Additionally, the trial court was permitted to consider DSS's pleadings as evidence of why those same pleadings were filed.
 

 These findings are supported by competent evidence and are binding on appeal.
 

 Respondent-father also contends that the trial court's finding with respect to the requirements of his case plan were unsupported. The court found that Hannah's parents were required to engage in substance abuse treatment, place Hannah in a safety resource, and engage in services with respect to domestic violence, conflict resolution, and improper discipline. As the GAL concedes, the social worker only testified to requirements with respect to substance abuse and Hannah's safety placement. The remainder of the finding is unsupported and must be disregarded.
 

 Finally, respondent-father challenges the trial court's ultimate finding and conclusion that Hannah was neglected. Although we have sustained many of respondent-father's objections to isolated portions of the trial court's findings, we may still utilize the supported findings to uphold the trial court's conclusion.
 
 See
 

 In re T.M.
 
 ,
 
 180 N.C. App. 539
 
 , 547,
 
 638 S.E.2d 236
 
 , 240 (2006) ("When, however, ample other findings of fact support an adjudication of neglect, erroneous findings unnecessary to the determination do not constitute reversible error." (citation omitted)). The trial court's supported findings show that respondent-father and Hannah's mother were in an altercation during which both parents tugged on Hannah causing her to scream and cry, that both parents had failed multiple drug tests, and that Hannah was living with her sister as a safety resource due to the parents' drug use. Respondent-father did not address his substance abuse issues while Hannah was in her sister's care. While respondent-father claims that there was no evidence that his or Hannah's mother's drug use placed Hannah at any risk of harm, this claim cannot be reconciled with the fact that Hannah had to be removed from her the home of her mother and respondent-father and placed with her sister as a safety resource placement. As a result, the trial court properly concluded that Hannah was neglected because respondent-father and Hannah's mother had failed to remedy the conditions which required Hannah to be placed with her sister in a safety plan, such that they were unable to provide Hannah with proper care.
 
 See
 

 In re K.J.D.
 
 ,
 
 203 N.C. App. at 661
 
 ,
 
 692 S.E.2d at 444
 
 (affirming the conclusion that the minor child was neglected where the findings indicated that both parents failed to remedy the conditions that led to the removal of the child).
 

 C. Dependency
 

 Respondent-father next argues the trial court erred by concluding that Hannah was dependent.
 
 [4]
 
 A dependent juvenile is defined, in relevant part, as "[a] juvenile in need of assistance or placement because ... the juvenile's parent, guardian, or custodian is unable to provide for the juvenile's care or supervision and lacks an appropriate alternative child care arrangement." N.C. Gen. Stat. § 7B-101(9) (2015). "In determining whether a juvenile is dependent, the trial court must address both (1) the parent's ability to provide care or supervision, and (2) the availability
 to the parent of alternative child care arrangements."
 
 In re T.B.
 
 ,
 
 203 N.C. App. 497
 
 , 500,
 
 692 S.E.2d 182
 
 , 184 (2010) (citation omitted). "Findings of fact addressing both prongs must be made before a juvenile may be adjudicated as dependent, and the court's failure to make these findings will result in reversal of the court."
 
 In re B.M.
 
 ,
 
 183 N.C. App. 84
 
 , 90,
 
 643 S.E.2d 644
 
 , 648 (2007) (citation omitted).
 

 In this case, the trial court's order did not include findings that address either prong of dependency. While the court's findings, as chronicled above, detail the parents' history of drug abuse and failure to make progress with their case plan, there are no findings that these behaviors rendered them wholly unable to parent Hannah. Instead, the findings indicate that respondent-father's drug abuse and other "erratic" behavior "resulted in an environment that is injurious to the
 child," which supported the trial court's conclusion that Hannah was neglected. In addition, there are no findings that the parents lacked an alternative child care arrangement. Accordingly, we must reverse the adjudication of dependency.
 
 Id
 
 .
 

 II
 

 Respondent-father argues that the trial court erred by awarding guardianship of Hannah to her adult sister as an initial disposition. We disagree.
 

 "All dispositional orders of the trial court after abuse, neglect and dependency hearings must contain findings of fact based upon the credible evidence presented at the hearing."
 
 In re Weiler
 
 ,
 
 158 N.C. App. 473
 
 , 477,
 
 581 S.E.2d 134
 
 , 137 (2003) (citation omitted). "The district court has broad discretion to fashion a disposition from the prescribed alternatives in N.C. Gen. Stat. § 7B-903(a), based upon the best interests of the child. ... We review a dispositional order only for abuse of discretion."
 
 In re B.W.
 
 ,
 
 190 N.C. App. 328
 
 , 336,
 
 665 S.E.2d 462
 
 , 467 (2008) (citing
 
 In re Pittman
 
 ,
 
 149 N.C. App. 756
 
 , 766,
 
 561 S.E.2d 560
 
 , 567 (2002) ).
 

 North Carolina General Statutes, section 7B-903 permits the trial court to "[a]ppoint a guardian of the person for the juvenile as provided in G.S. 7B-600" as a disposition after a neglect and dependency adjudication. N.C. Gen. Stat. § 7B-903(a)(5) (2015). This dispositional option was added to the statute in 2015,
 
 see
 
 2015 N.C. Sess. Law 136, sec. 10, and this Court has not yet discussed guardianship in the context of an initial disposition. Respondent-father argues that the trial court erred by failing to order DSS to pursue reunification efforts as part of its initial disposition.
 

 Dispositional hearings are governed by General Statutes, section 7B-901 : "If the disposition order places a juvenile
 
 in the custody of a county department of social services
 
 , the court shall direct that reasonable efforts for reunification as defined in G.S. 7B-101 shall not be required if the court makes written findings of fact pertaining to any" of several subsequently-listed circumstances. N.C. Gen. Stat. § 7B-901(c) (2015) (emphasis added). Respondent-father argues that the trial court circumvented this statute by granting guardianship to Hannah's sister without first requiring DSS to engage in reunification efforts. However, N.C. Gen. Stat. § 7B-901(c) does not apply to the initial disposition in this case, because the trial court's order did not place Hannah "in the custody of a county department of social services."
 
 Id
 
 . The statute clearly permits the granting of guardianship as an initial disposition without requiring any findings under N.C.G.S. § 7B-901(c).
 
 [5]
 

 Respondent-father also argues that the trial court failed to adequately verify that the sister understood the legal consequences of guardianship or that the sister had sufficient resources to care for Hannah. Before placing a juvenile in a guardianship, the trial court is required to determine whether the proposed guardian "understands the legal significance of the appointment" and "will have adequate resources to care appropriately for the juvenile." N.C. Gen. Stat. §§ 7B-600(c), 7B-906.1(j) (2015). "We have held that the trial court need not 'make any specific findings in order to make the verification' under ... [subsection (j) ]. ... But the record must contain competent evidence of the guardians' financial resources ...."
 
 In re J.H.
 
 ,
 
 244 N.C. App. 255
 
 , ----,
 
 780 S.E.2d 228
 
 , 240 (2015) (quoting
 
 In re J.E., B.E.
 
 ,
 
 182 N.C. App. 612
 
 , 616-17,
 
 643 S.E.2d 70
 
 , 73 (2007) );
 
 see also
 

 In re P.A.
 
 ,
 
 241 N.C. App. 53
 
 ,
 
 772 S.E.2d 240
 
 , 246 (2015) ("[S]ome evidence of the guardian's 'resources' is necessary as a practical matter, since the trial court cannot make any determination of adequacy without evidence.").
 

 At the hearing, the social worker testified that she had explained to the sister "the duties and responsibilities of a guardian." Moreover, the sister testified that she understood she "would be responsible for getting
 the child to school, making sure the child remains in school whenever the child is school age, and that [she]'d see to all of her medical treatment" as well as for Hannah's "overall care." This testimony was
 sufficient to support the trial court's finding that the sister understood the legal consequences of guardianship.
 

 The trial court also received specific evidence regarding the sister's resources. The sister submitted an affidavit detailing her finances, including her present income, and she testified she was able to financially care for Hannah. The social worker additionally testified that the sister was employed and had been able to make child care arrangements for Hannah while she worked. This was sufficient "evidence of the guardian's 'resources' " for the trial court to determine that the sister could adequately care for Hannah financially.
 
 See
 

 In re P.A.
 
 ,
 
 241 N.C. App. 53
 
 , 772 S.E.2d at 246 ;
 
 In re N.H.
 
 , --- N.C. App. ----, ----,
 
 804 S.E.2d 841
 
 (2017). Thus, the court properly verified that the sister could serve as Hannah's guardian, and we discern no abuse of discretion in the trial court's determination that guardianship with her sister was in Hannah's best interests.
 

 III
 

 Although the trial court properly awarded guardianship of Hannah to her sister as an initial disposition, the court also conducted concurrent 90-day review and permanency planning hearings and established a secondary permanent plan of reunification. Respondent-father challenges the portion of the trial court's order which resulted from these portions of the combined hearing. He contends that this portion of the order violates the "Juvenile Code's priority for reunification efforts." We disagree.
 

 Pursuant to N.C. Gen. Stat. § 7B-905,
 

 [a] dispositional order under which a juvenile is removed from the custody of a parent, guardian, custodian, or caretaker shall direct that the review hearing required by G.S. 7B-906.1 be held within 90 days from of [sic] the date of the dispositional hearing and, if practicable, shall set the date and time for the review hearing.
 

 N.C. Gen. Stat. § 7B-905(b) (2015). General Statutes, section 7B-906.1 states, in turn:
 

 In any case where custody is removed from a parent, guardian, or custodian, the court shall conduct a review hearing within 90 days from the date of the dispositional hearing and shall conduct a review hearing within six months thereafter. Within 12 months of the date of the initial order removing custody, there shall be a review
 hearing designated as a permanency planning hearing. Review hearings after the initial permanency planning hearing shall be designated as subsequent permanency planning hearings. The subsequent permanency planning hearings shall be held at least every six months thereafter or earlier as set by the court to review the progress made in finalizing the permanent plan for the juvenile, or if necessary, to make a new permanent plan for the juvenile.
 

 N.C.G.S. § 7B-906.1(a). In this case, the court purported to conduct a combined "dispositional, a 90 day review, and an initial permanency planning hearing." Respondent-father appears to challenge the trial court's authority to conduct this combined hearing to the extent that it was used to "allow DSS to circumvent providing reunification efforts." However, the record reflects that respondent-father received multiple notices in the weeks and months before the hearing that the trial court would be conducting a combined adjudication, disposition, and permanency planning hearing. Moreover, respondent-father did not object when DSS informed the court that the hearing "was noticed on for both permanency planning and disposition, so we'd like to proceed with both." Accordingly, he has waived appellate review of the propriety of the combined hearing.
 
 See
 
 N.C. R. App. P. 10(a)(1) (2017).
 

 "At the conclusion of each permanency planning hearing, the judge shall make specific findings as to the best permanent plans to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C.G.S. § 7B-906.1(g). Permanent plans are governed by N.C. Gen. Stat. § 7B-906.2, which states, in relevant part, as follows:
 

 At any permanency planning hearing, the court shall adopt concurrent permanent
 plans and shall identify the primary plan and secondary plan. Reunification shall remain a primary or secondary plan unless the court made findings under G.S. 7B-901(c) or makes written findings that reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety. The court shall order the county department of social services to make efforts toward finalizing the primary and secondary permanent plans and may specify efforts that are reasonable to timely achieve permanence for the juvenile.
 

 N.C. Gen. Stat. § 7B-906.2(b) (2015).
 

 As noted above, the trial court's order contains no findings under N.C. Gen. Stat. § 7B-901(c), as that statutory subsection does not apply
 to this case since Hannah was not placed in DSS custody. Thus, when establishing permanent plans, the court was required by N.C. Gen. Stat. § 7B-906.2 to make reunification a primary or secondary plan and require reunification efforts by DSS, unless the court found that "reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety." N.C.G.S. § 7B-906.2(b). The court was permitted to make this finding even though this was the first permanency planning hearing in the case.
 
 Cf.
 
 N.C. Gen. Stat. § 7B-906.2(c) (2015) ("
 
 At the first permanency planning hearing
 
 held pursuant to G.S. 7B-906.1, the court shall make a finding about whether the efforts of the county department of social services toward reunification were reasonable,
 
 unless reunification efforts were ceased in accordance with ... this section
 
 ." (emphasis added)). The trial court's order includes the following finding of fact:
 

 Although the secondary plan shall be reunification, it would be clearly unsuccessful for the department to make reunification efforts with the respondents at this time. The child has been placed outside the home since February 2016, and with the child's adult sister ... since April 2016. The respondents have tested positive twice for methamphetamine since April 2016. The respondents did submit to a comprehensive clinical assessment where they were recommended services and they subsequently failed to complete those services before a petition was filed in this matter. They have not completed or made any progress on their case plans since the petition was filed. ...
 

 Based on this finding, the court concluded that "[i]t is contrary to the safety and health of the juvenile to return to the home of the aforementioned respondents at this time." Respondent-father argues that this finding and conclusion are unsupported because they only examine his behavior prior to the hearing, when he was not under a court order to participate in a case plan. He cites this Court's decision in
 
 In re A.G.M.
 
 , a termination of parental rights case, for the proposition that
 

 neither the trial court nor DSS ha[s] the authority in [a] ... neglect and dependency proceeding to require Respondent to sign any service agreement or submit to any testing, evaluation, or therapy in relation to any custody determinations concerning the children prior to entry of ... [a] disposition and permanency planning order.
 

 241 N.C. App. 426
 
 , 436,
 
 773 S.E.2d 123
 
 , 131 (2015). This case is distinguishable, because unlike the respondent in
 
 A.G.M.
 
 , who never agreed
 to a case plan, respondent-father voluntarily entered into a case plan with DSS which resulted in Hannah being removed from the home, and then he failed to comply with the case plan. The trial court could obviously consider respondent-father's previous failure to comply with his own agreed-upon plan when determining whether further reunification efforts made by DSS would be successful. Respondent-father argues that because these efforts were made before the filing of the petition, they should be considered "preventative" rather than reunification efforts and that they should not be considered when predicting the success of future reunification efforts by DSS. However, respondent-father cannot forestall review of his conduct by taking advantage of DSS's good faith efforts to reunify him with Hannah before resorting to filing a juvenile petition. Respondent-father willingly subjected himself to a case plan in order to be reunified
 with Hannah, and the trial court was permitted to consider his conduct in response to the plan, as well as DSS's efforts when considering the propriety of further reunification efforts.
 

 The court's findings, which were supported by testimony and evidence introduced at the hearing, demonstrate that respondent-father completely failed to comply with his case plan while Hannah was in a safety placement with her sister. Respondent-father tested positive for methamphetamines twice while Hannah was in her sister's care, and he did not follow through on any recommended treatment. Instead, he continued to deny his drug use, even as late as the adjudication hearing. The trial court could properly use respondent-father's failure to comply with his voluntary case plan as a factor to determine whether further reunification efforts would be successful. In this context, the court's findings support its determination that further reunification efforts would be unsuccessful. Thus, the trial court complied with its obligations under N.C. Gen. Stat. § 7B-906.2 by setting a primary and secondary plan and by determining that no further reunification efforts were required.
 

 IV
 

 Respondent-father argues that the trial court's order includes inconsistent provisions regarding visitation. We agree.
 

 In one portion of its order, the trial court found that "visitations with the respondents have not been consistent or appropriate and they should be ceased ...." However, the court also found that "it is in the best interest of the minor child for the respondents to have visitation with their child for a minimum of one hour supervised per week ...." The trial court's oral rendering at the hearing and the decretal portion of its order are consistent with this latter finding, and thus, it appears the
 trial court intended to allow supervised visitation for one hour. However, the order must be remanded to reconcile the discrepancy between the visitation findings.
 

 Conclusion
 

 The trial court made adequate findings of fact, supported by competent evidence, to support its conclusion that Hannah was neglected. The court did not abuse its discretion by awarding guardianship to the sister at disposition. The court made sufficient findings of fact to support its conclusion that further reunification would be unsuccessful. Those portions of the trial court's order are affirmed. However, the court failed to make sufficient findings to support its conclusion that Hannah was dependent, and that portion of the trial court's order is reversed. The court's order contains inconsistent findings with respect to visitation. Thus, the order is remanded in order for the trial court to reconcile these findings as to visitation.
 

 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 

 Judges STROUD and ZACHARY concur.
 

 The parties stipulated to this pseudonym for the minor child pursuant to N.C. R. App. P. 3.1(b) (2017).
 

 The mother did not appeal the trial court's order and is not a party to this appeal.
 

 Respondent-father notes that testimony regarding this report was admitted for the limited purpose of demonstrating why DSS became involved in the case. The trial court's order reflects this evidence was properly considered only for that purpose.
 

 At the adjudication, the trial court did not announce an adjudication of dependency. However, the trial court's written order, which concluded that Hannah was dependent, is controlling.
 
 See
 

 In re O.D.S.
 
 , --- N.C. App. ----, ----,
 
 786 S.E.2d 410
 
 , 418 (2016) (holding that where the trial court was silent on the ground of dependency but entered a written order not otherwise in conflict with the rendered judgment, the written order controls).
 

 Accordingly, this case is distinguishable from this Court's recent decision in
 
 In re J.M.
 
 , --- N.C. App. ----,
 
 804 S.E.2d 830
 
 (2017), which held that findings under N.C. Gen. Stat. § 7B-901(c) were required in a combined dispositional and permanency planning order when the child was placed in DSS custody and DSS was relieved of making reunification efforts.