BERGER, Judge.
 

 *242
 
 Respondent-mother appeals from an order that adjudicated the juvenile, C.P. ("Carl"),
 
 [1]
 

 *190
 
 as a neglected and dependent juvenile, and awarded permanent guardianship to the juvenile's half-brother ("Chris"). On
 
 *243
 
 January 2, 2018, this Court filed an opinion that reversed the adjudication that Carl is a dependent juvenile, and vacated the order for failing to order reunification as a concurrent plan and failing to make required findings regarding guardianship with Chris. On January 29, 2018, petitioner-appellee Orange County Department of Social Services ("OCDSS") filed a Petition for Rehearing pursuant to Rule 31 of the North Carolina Rules of Appellate Procedure. We subsequently allowed the Petition for Rehearing, and this opinion replaces the original opinion. After careful review, we affirm the portion of the trial court's order that ceases reunification efforts; reverse the adjudication that Carl is a dependent juvenile; and vacate the order for failing to order reunification as a concurrent permanent plan and failing to make required findings regarding guardianship with Chris.
 

 Factual and Procedural Background
 

 On July 14, 2015, OCDSS filed a juvenile petition alleging that thirteen-year-old Carl was a neglected and dependent juvenile. A hearing was held on August 6, 2015 and an order was entered on August 27, 2015 in which the trial court (1) adjudicated Carl and his older sister
 
 [2]
 
 as neglected and dependent, and (2) awarded custody of Carl and his sister to their adult half-brother. Respondent-mother appealed.
 

 On October 4, 2016, this Court reversed and remanded the case for a new hearing because the order did not result from a proper adjudicatory hearing or valid consent by Respondent-mother.
 
 In re K.P., C.P.
 
 , --- N.C. App. ----, ----,
 
 790 S.E.2d 744
 
 , 749 (2016). On remand, the trial court held an "adjudication/disposition and permanency planning hearing" on March 2, 2017. The trial court (1) adjudicated Carl as dependent and neglected, and (2) awarded guardianship of Carl to his adult half-brother in an order dated March 21, 2017. Respondent-mother filed notice of appeal.
 

 Respondent-mother concedes that she failed to serve a copy of her written notice of appeal on the guardian for the juvenile.
 
 See
 
 N.C.R. App. P. 3.1(a). Although Respondent-mother failed to comply with Rule 3.1(a) of the North Carolina Rules of Appellate Procedure, this Court has the discretionary authority "to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action." N.C.R. App. P. 21(a)(1). Therefore, we grant Respondent-mother's petition for writ of certiorari and address the merits of this case.
 

 *244
 

 Analysis
 

 Respondent-mother first contends that the court erred by adjudicating Carl as a dependent juvenile. The Juvenile Code defines a dependent juvenile as one whose "parent, guardian, or custodian is unable to provide for the juvenile's care or supervision and lacks an appropriate alternative child care arrangement." N.C. Gen. Stat. § 7B-101(9) (2015). "Under this definition, the trial court must address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements."
 
 In re P.M.
 
 ,
 
 169 N.C. App. 423
 
 , 427,
 
 610 S.E.2d 403
 
 , 406 (2005). Respondent-mother argues that all of the evidence and findings show that Carl was always in the care of a suitable relative, and thus he could not be adjudicated as dependent. OCDSS concedes that this adjudication was error because at the time of the adjudication, Carl was living with his brother, who was a responsible adult. Because he had an appropriate alternative child care arrangement, Carl was not a dependent juvenile, and the adjudication must be reversed.
 

 Respondent-mother next contends that the court lacked authority to cease reunification efforts at the initial dispositional hearing. Specifically, she argues the court improperly heard the adjudication, initial disposition, and permanency planning hearings on the same day. Associated therewith, Respondent-mother also asserts that the trial court was required to order reunification as a
 
 *191
 
 concurrent plan pursuant to N.C. Gen. Stat. § 7B-906.2.
 

 The "dispositional hearing shall take place immediately following the adjudicatory hearing." N.C. Gen. Stat. § 7B-901(a) (2015). The trial court is required to "conduct a review hearing within 90 days from the date of the [initial] dispositional hearing." N.C. Gen. Stat. § 7B-906.1(a) (2015). Within one year from "the initial order removing custody, there shall be a review hearing designated as a permanency planning hearing."
 

 Id.
 

 The General Assembly has not proscribed conducting adjudications, dispositional, and permanency planning hearings on the same day, and the trial court did not err in hearing these matters.
 

 However, Respondent-mother correctly asserts, and the guardian
 
 ad litem
 
 concedes, that the trial court erred in failing to order reunification as a concurrent plan during the initial permanency planning hearing. "At any permanency planning hearing, the court shall adopt concurrent permanent plans and shall identify the primary plan and secondary plan.
 
 Reunification shall remain
 
 a primary or secondary plan unless" certain findings are made. N.C. Gen. Stat. § 7B-906.2(b) (2015) (emphasis
 
 *245
 
 added). The statutory requirement that "reunification shall remain" a plan presupposes the existence of a prior concurrent plan which included reunification. Thus, reunification must be part of an initial permanent plan. Here, even though the trial court found that Respondent-mother "presents a risk to the health and safety of the juvenile" and that "[r]eunification efforts ... would be futile," the trial court erred in failing to include reunification as part of the initial concurrent plan.
 

 The same cannot be said of reunification efforts, however. Pursuant to Section 7B-906.1(g), a trial court "
 
 shall
 
 inform the parent, guardian, or custodian that failure or refusal to cooperate with the plan may result in an order of the court in a
 
 subsequent
 
 permanency planning hearing that reunification efforts may cease." N.C. Gen. Stat. § 7B-906.1(g) (2015) (emphasis added). However, despite the plain language of Section 7B-906.1(g), a prior panel of this Court has held that a trial court can cease reunification efforts at the first permanency planning hearing if necessary findings of fact were made that showed reunification would be unsuccessful or not in the juvenile's interests.
 
 In re: H.L.
 
 , --- N.C. App. ----, ----,
 
 807 S.E.2d 685
 
 , 693 (2017).
 
 [3]
 
 The trial court made findings that: Respondent is a danger to C.P.'s health and safety; Respondent failed to take her medications properly; Respondent was unable to feed or care for C.P.; C.P. did not feel safe with Respondent; C.P. was afraid to go to sleep because of Respondent's behavior; and Respondent abused medications and used marijuana which impacted her ability to function and parent C.P. The trial court also found that reunification efforts would be futile and Respondent was unable to provide a safe and stable home for C.P. These findings support the trial court's conclusion that reunification efforts may be ceased, and we must affirm this portion of the order despite the fact that such action is contrary to the plain language of Section 7B-906.1(g).
 

 Respondent-mother next contends that the court erred by ordering a permanent plan of guardianship with a relative without making a finding mandated by N.C. Gen. Stat. § 7B-906.1(e)(1) (2015) ; namely,
 
 *246
 
 "[w]hether it is possible for the juvenile to be placed with a parent within the next six months, and if not, why such placement [with the parent] is not in the juvenile's best interests."
 

 Id.
 

 The guardian
 
 ad litem
 
 and OCDSS concede that the order does not contain the mandated finding. Although the trial court
 
 *192
 
 addressed Respondent-mother's faults as a mother and the fractured relationship she had with Carl, the court erred in not finding the key issues of whether it is possible for the child to be returned to her within six months, and if not possible, why placement of the child with Respondent-mother is not in the child's best interest.
 

 Respondent-mother next contends that the court erred by awarding guardianship of Carl to a non-parent without finding that Respondent-mother was an unfit parent or had acted inconsistently with her constitutionally protected parental status. Respondent-mother concedes that she did not raise this issue in the trial court but argues she did not have the opportunity.
 

 "[T]o apply the best interest of the child test in a custody dispute between a parent and a non-parent, a trial court must find that the natural parent is unfit or that ... her conduct is inconsistent with a parent's constitutionally protected status."
 
 In re B.G.
 
 ,
 
 197 N.C. App. 570
 
 , 574,
 
 677 S.E.2d 549
 
 , 552 (2009). This finding should be made when the court is considering whether to award guardianship to a non-parent.
 
 In re P.A.,
 

 241 N.C. App. 53
 
 , 66-67,
 
 772 S.E.2d 240
 
 , 249 (2015). To preserve the issue for appellate review, the parent must raise it in the court below.
 
 In re T.P.,
 

 217 N.C. App. 181
 
 , 186,
 
 718 S.E.2d 716
 
 , 719 (2011) (citation omitted). However, for waiver to occur the parent must have been afforded the opportunity to object or raise the issue at the hearing.
 
 In re R.P.
 
 , --- N.C. App. ----, ----,
 
 798 S.E.2d 428
 
 , 431 (2017). Here, although counsel had ample notice that guardianship with Chris was being recommended, Respondent-mother never argued to the court or otherwise raised the issue that guardianship would be an inappropriate disposition on a constitutional basis. We conclude Respondent-mother waived appellate review of this issue.
 

 Conclusion
 

 Accordingly, we affirm the portion of the trial court's order that ceases reunification efforts. We reverse the adjudication that Carl is a dependent juvenile, and vacate the order for failing to order reunification as a concurrent permanent plan and failing to make required findings regarding guardianship with Chris. Because we reverse and remand, we need not address the issue of visitation, but we note that
 
 *247
 
 the trial court made appropriate findings pursuant to N.C. Gen. Stat. § 7B-905.1. We remand for findings consistent with this opinion.
 

 AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, AND REMANDED.
 

 Judge ELMORE concurs.
 

 Judge ARROWOOD concurs in result only.
 

 [1]
 

 Carl is a stipulated pseudonym for ease of reading and to protect the juvenile's identity pursuant to N.C.R. App. P. 3.1(b).
 

 [2]
 

 Carl's sister has reached the age of majority and is not a party to this appeal.
 

 [3]
 

 Respectfully, it appears that our Court in
 
 H.L.
 
 did not focus on Section 7B-906.1(g) in its entirety. The second sentence of that section requires prior notice be provided to a parent before reunification efforts may be ceased. Thus, the statutory language precludes eliminating reunification efforts at the permanency planning hearing in this case, as appellant never received the mandated notice. However, case law requires us to follow
 
 H.L.
 

 In re Civil Penalty
 
 ,
 
 324 N.C. 373
 
 , 384,
 
 379 S.E.2d 30
 
 , 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court.") This issue will need to be resolved through an
 
 en banc
 
 hearing with this Court, or a decision from the North Carolina Supreme Court.