INMAN, Judge.
Respondent-Appellant ("Mother") appeals from a permanency planning order in a child neglect proceeding changing the permanent plan from reunification with Mother to custody with a court-approved caretaker. She contends the trial court erred in: (1) ceasing reunification efforts based on its findings of fact; (2) awarding custody to the minor's grandmother without a finding that Mother was unfit or acted contrary to her constitutional rights as a parent; (3) verifying the appointed custodian without sufficient evidence; and (4) waiving future review hearings without necessary findings of fact. After careful review, we affirm in part, vacate in part, and remand for further proceedings.
I. FACTUAL AND PROCEDURAL HISTORY
In the early 2000s, Mother had two children, N.B. ("Nathan") and D.B. ("Daniel"),[1] with her husband in Georgia. By 2010, Mother had separated from her husband and remarried. Mother had also given birth to a child, A.T. ("Allison"), by her second husband. This appeal concerns Allison.
One day in 2010, police in Glynn County, Georgia, arrested Mother and her second husband for first degree cruelty to children for their abusive corporal punishment of Daniel. The Division of Family and Children Services intervened, instituting a safety plan and prohibiting the couple from unsupervised contact with the children pending compliance with that plan. They eventually completed the plan, which included parenting and anger management courses about non-physical forms of discipline. At some point thereafter, Mother's first husband took custody of Nathan and Daniel while she and her second husband had custody of Allison. Mother continued to have weekend visitation rights with Nathan and Daniel.
By 2016, all the adults and children relevant to this action had settled into different homes in North Carolina and Mother had separated from her second husband. One Saturday evening that November, Mother and her three children were staying at a friend's home when Daniel inappropriately touched another child. Mother found out and, the following morning, beat Daniel with a belt and yardstick from 10:30 a.m. until 1 p.m., when her first ex-husband arrived to pick up his son. Mother explained why she was beating Daniel and said she would have continued to discipline him physically had his father not arrived. Daniel's father drove him to the hospital, where he was treated for a dislocated thumb and bruising on his thighs, arms, and legs.
The Wayne County Department of Social Services ("DSS") was notified of the abuse and attempted to make contact with Mother to, among other things, check on Allison's welfare. Mother was uncooperative, however, and refused to tell DSS where Allison was. When DSS attempted to speak with Allison at her school, they discovered that Mother had removed her daughter to avoid being interviewed. Two social workers eventually made contact with Mother and Allison at a relative's home. While the social workers were standing on the front porch, Mother left with Allison through the back door. Mother then drove away with Allison, nearly running over one of the social workers in the process. Mother was later convinced to return to the house, at which time she agreed with DSS to place Allison with a relative. Some time later, Mother removed Allison from that relative's home and took Allison to her paternal grandmother's ("Grandmother") house without DSS approval.
DSS filed juvenile petitions for Nathan and Daniel on 22 November 2016 and for Allison on 6 December 2016. Allison's petition alleged neglect due to living in an environment injurious to her welfare arising out of Mother's corporal punishment of Daniel. A pre-adjudication conference order was entered on 15 December 2016 placing Allison in the temporary custody of Grandmother. On 9 February 2017, following a hearing on the DSS petition regarding Allison, the trial court adjudicated her neglected. It ordered Mother to: (1) complete mental health and psychological assessments; (2) participate in abuse and anger management counseling and follow all recommendations; (3) attend parenting education classes to address child development and discipline and demonstrate skills learned from those courses; (4) comply with child medical and forensic exams; and (5) secure stable housing and employment. Mother was limited to supervised telephonic contact with Allison, who remained in Grandmother's custody.[2]
At a subsequent review hearing on 4 May 2017, the trial court found that it was contrary to Allison's welfare to be placed in the custody of Mother. The trial court ordered Allison's continued placement with Grandmother and established a permanent plan of reunification.[3] Mother was ordered to continue working on the plan imposed at the adjudicatory and dispositional hearing, including that she "[d]emonstrate appropriate parenting once visitation resumes[.]" Consistent with that requirement, Mother was allowed supervised visitation on Saturday afternoons.
Following the review hearing in Allison's case, DSS conducted a child and family evaluation ("CFE") for Nathan and Daniel in late May 2017. A DSS social worker interviewed Mother as part of the evaluation and asked Mother if she regretted her punishment of Daniel; although Mother had attended parenting classes at the time of the interview, she replied that she only felt bad about hitting Daniel because she lost custody of her children. She further stated that she believed corporal punishment was appropriate, and that the only reason she would not hit her children would be if DSS were going to take custody away from her. The social worker also interviewed the instructor in Mother's parenting classes, who said that Mother never understood why she was required to take them. In an interview with Daniel's and Nathan's step-mother, DSS also learned that the brothers had mentioned Mother beating Allison with a hairbrush. The written CFE report concluded that, "[g]iven [Mother's] anger management issues and her lack of remorse regarding the [corporal] discipline, it is likely that this will repeat at some future time." It also recommended "DSS ... continue to assess the safety of [Allison]" based on the information gleaned from the step-mother.
Consistent with that recommendation, a DSS social worker met with Allison on 13 June 2017 and asked what happened when she got in trouble. Allison replied that Mother had hit her with a stick and a belt. DSS catalogued this information, along with other pertinent data, into a report for use at the next permanency planning hearing. At the conclusion of the report, DSS recommended the permanent plan be changed to custody with a relative. The guardian ad litem ("GAL") assigned to Allison also drafted a report recommending permanent custody with a relative.
The trial court held its next permanency planning hearing over two days on 28 September and 10 October 2017. In its written order, the trial court found as a fact that Mother had completed a mental health evaluation, complied with DSS's recommendations in the CFE, obtained employment and stable housing, and completed a psychological assessment and parenting classes. However, the trial court also found:
13. That ... [M]other has a lack of remorse for physically abusing [Daniel].
....
21. That it is impossible to place [Allison] in the custody of either parent on this date or within the next 6 months.
....
24. That when ... [M]other was in Georgia, the Georgia Child Protective Services staff recommended that she not use physical discipline for any of her children.
25. That [Allison] has confirmed physical discipline by ... [M]other using a belt or a stick. This was after ... [M]other had taken anger management classes and parenting classes.
26. That it is contrary to the welfare of [Allison] to be placed in the custody of either parent.
Based on these and other findings, the trial court changed the permanent plan to custody with a court-approved caretaker and continued custody with Grandmother. The trial court also ordered that the case be removed from its active calendar.
Mother filed a notice of appeal pursuant to N.C. Gen. Stat. §§ 7B-1001(1) and (4) (2015) and a notice to preserve right of appeal pursuant to N.C. Gen. Stat. § 7B-1001(a)(5) (2015) on 22 December 2017. When DSS did not file a petition to terminate her parental rights within 180 days of the permanency planning order,[4] she filed a new notice consistent with her earlier preservation of appeal under N.C. Gen. Stat. § 7B-1001(a)(5).
II. ANALYSIS
A. Standard of Review
In reviewing a permanency planning order ceasing reunification efforts, we "determine whether the trial court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the trial court's conclusions, and whether the trial court abused its discretion with respect to disposition." In re P.T.W. , --- N.C. App. ----, ----, 794 S.E.2d 843, 848 (2016) (citations and quotation marks omitted). Unchallenged findings are binding on this Court, as are challenged findings supported by any competent evidence. Id.[5]
B. Cessation of Reunification
Both parties agree that the permanency planning order, in changing the permanent plan to custody with a court-appointed caretaker and placing Allison with Grandmother, impliedly ceased reunification efforts with Mother. See In re N.B. , 240 N.C. App. 353, 362, 771 S.E.2d 562, 568 (2015) (holding a permanency planning order impliedly ceased reunification efforts by changing the permanent plan from reunification to guardianship and placing custody of the children with guardians). Such an order must include "written findings that reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety," N.C. Gen. Stat. § 7B-906.2(b) (2017), which include:
(1) Whether the parent is making adequate progress within a reasonable period of time under the plan.
(2) Whether the parent is actively participating in or cooperating with the plan, the department, and the guardian ad litem for the juvenile.
(3) Whether the parent remains available to the court, the department, and the guardian ad litem for the juvenile.
(4) Whether the parent is acting in a manner inconsistent with the health or safety of the juvenile.
N.C. Gen. Stat. § 7B-906.2(d) (2017) ; see also In re I.K. , --- N.C. App. ----, ----, 818 S.E.2d 359, 362-63 (2018) (holding findings under N.C. Gen. Stat. § 7B-906.2(d) were necessary to cease reunification efforts at a permanency planning hearing). Further, a trial court must make findings, if ceasing reunification, as to "[w]hether efforts to reunite the juvenile with either parent clearly would be unsuccessful or inconsistent with the juvenile's health or safety and need for a safe, permanent home within a reasonable period of time." N.C. Gen. Stat. § 7B-906.1(d) (2017). These findings need not recite the statute verbatim but "must address the statute's concerns." In re L.M.T. , 367 N.C. 165, 168, 752 S.E.2d 453, 455 (2013). "Put differently, the order must make clear that the trial court considered the evidence in light of whether reunification would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time." Id. at 167-68, 752 S.E.2d at 455 (internal quotation marks omitted).
Mother acknowledges that the trial court's findings address the requirements of N.C. Gen. Stat. § 7B-906.2(d), but argues that they show reunification would be successful-rather than not-based upon her continued progress on her case plan. In light of those findings showing progress, Mother reasons, it is unclear whether the trial court intended to cease reunification efforts or determined that such efforts would be futile or unsuccessful. See In re I.K. , --- N.C. App. at ----, 818 S.E.2d at 363 (vacating and remanding an order ceasing reunification where it was unclear from the findings whether the parents had failed to make reasonable progress). Mother further challenges the trial court's finding that it would be impossible to place Allison with her within six months.
We agree with Mother that the findings show some progress on her plan; we disagree, however, that the evidence and findings indicate reunification would be successful on the whole, particularly in light of her corporal punishment of Daniel and Allison after her participation in parenting and anger management classes.
DSS's petition alleged Allison was neglected due to an environment injurious to her welfare arising out of Mother's use of extreme corporal punishment with Daniel. In the CFE submitted to the Court-which was conducted following Mother's participation in parenting and anger management classes in both Georgia and North Carolina-Mother reportedly made comments indicating that she did not regret beating Daniel. She also expressed that "that's how she had been disciplined as a child and she felt that it was right." In the parenting classes Mother completed, she "maintained her posture that she was not sure what she had done to cause this[,]" telling the instructor she " 'already knew a lot of this' and she wasn't understanding why she was in the class."
This evidence supports the trial court's finding that placement of Allison would not be possible in the next six months. See, e.g., In re T.K. , 171 N.C. App. 35, 39, 613 S.E.2d 739, 741 (2005) ("[I]n determining whether it is possible for the children to return home within six months of the permanency planning hearing, the court must look at the progress the parents have made in eliminating the conditions that [led] to the removal of the children."). Further, the trial court found in an unchallenged finding that Mother "has a lack of remorse for physically abusing the half sibling of [Allison]."[6] [R p 51] Mother also does not challenge the trial court's findings "[t]hat it is contrary to the welfare of [Allison] to be placed in the custody of either parent[,]" and that Allison "confirmed physical discipline by ... [M]other using a belt or a stick ... after ... [M]other had taken anger management classes and parenting classes."[7] As a result, we reject Mother's argument and hold that the trial court's findings "make clear that the trial court considered the evidence in light of whether reunification would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time." In re L.M.T. , 367 N.C. at 168, 752 S.E.2d at 455 (citation and quotation marks omitted).
C. Constitutional Right to Custody and Care
Mother next argues that the trial court erred in awarding Grandmother custody under the best interest standard without finding that Mother was unfit or acted inconsistent with her constitutional rights. This argument is waived if a parent with notice that placement with a non-parent has been recommended fails to raise the constitutional issue at trial. In re C.P. , --- N.C. App. ----, ----, 812 S.E.2d 188, 192 (2018). Here, the GAL filed a report ten days prior to the hearing recommending the permanent plan be changed to custody with a relative, and DSS introduced evidence at the outset of the hearing that the agency was also making that recommendation. Mother's trial counsel was permitted to argue her case at the conclusion of the hearing, and at no point did she raise this constitutional argument. Having received notice that cessation of reunification efforts was being recommended prior to and at the permanency planning hearing, Mother has waived review of this issue by failing to argue it below. In re C.P. , --- N.C. App. at ----, 812 S.E.2d at 192.
D. Grandmother's Verification
In her third argument, Mother challenges the trial court's finding that Grandmother "understands custody and is willing to continue as the custodian of the juvenile." Because we agree that this finding and necessary verification was unsupported by the evidence, we strike the finding, vacate the award of custody to Grandmother, and remand for further proceedings.
In placing a child in a non-parent's custody, the trial court must "verify that the person receiving custody ... understands the legal significance of the placement or appointment[.]" N.C. Gen. Stat. § 7B-806.1(j) (2017). Grandmother testified at the permanency planning hearing about her care of Allison, but she was not asked if she understood the legal significance of custody. While there was some discussion of Mother's visitation rights and Grandmother's willingness to supervise those visits, no inquiry was made concerning Grandmother's understanding of her obligations as custodian to Allison. And, although Grandmother had previously received "legal temporary custody" and was providing for Allison's material medical, and educational needs, there is no evidence in the record that the trial court, the GAL, or DSS informed her of the legal rights and obligations inherent to permanent custody and their significance following cessation of reunification efforts. See In re J.H. , 244 N.C. App. 255, 271-72, 780 S.E.2d 228, 240 (2015) (holding that the evidence was insufficient to verify potential guardians who had a successful 10-month kinship placement with the juvenile and already had custody over the juvenile's sister when the potential guardians did not testify and the reports submitted to the court did not address the issue). Thus, while Grandmother's testimony reflects her practical understanding of and commitment to the custody arrangement, there is no evidence that she "understands [its] legal significance[.]" N.C. Gen. Stat. § 7B-806.1(j); see also In re E.M. , --- N.C. App. ----, ----, 790 S.E.2d 863, 872 (2016) (holding the trial court erred in verifying a potential custodian when the DSS report was silent on the question and the potential custodian did not testify "regarding her understanding of the legal relationship, and the court never examined her to determine whether she understands the legal significance of the relationship" (emphasis added) ). As a result, we vacate this finding and the award of custody to Grandmother and remand for further proceedings.[8]
E. Waiver of Future Hearings
In her final argument, Mother contends that the trial court erred in waiving future review hearings without making the necessary statutory findings. See N.C. Gen. Stat. § 7B-906.1(n) (2017). Because we have already vacated the award of custody to Grandmother, review of this issue is not necessary. See In re P.A. , 241 N.C. App. 53, 65, 772 S.E.2d 240, 248 (2015) ("As we have already determined that the orders granting guardianship ... must be vacated for [failure to verify the potential guardian as required by N.C. Gen. Stat. § 7B-906.1(j) ] and are remanding the case, further review hearings will be necessary."). On remand, should the trial court make proper findings sufficient to award Grandmother or another suitable person custody and determine that further review hearings are not necessary, it may waive future hearings only after making those findings required by N.C. Gen. Stat. § 7B-906.1(n).
III. CONCLUSION
For the foregoing reasons, we affirm the trial court's cessation of reunification efforts, strike the finding that Grandmother understands custody, vacate the award of custody to her, and remand for further proceedings. The trial court may, in its discretion, hear additional evidence on remand; should it determine that further permanency planning review hearings may be waived during its proceedings, it shall make all findings required by N.C. Gen. Stat. § 7B-906.1(n).
AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
Report per Rule 30(e).
Judges DILLON and COLLINS concur.

For ease of reading, pseudonyms are used throughout this opinion to refer to the minor children.

Allison's father was represented by counsel at the adjudicatory and dispositional hearing; he later waived counsel and did not appear at a subsequent hearing. He has not appealed from the order at issue on appeal, and we therefore omit him from further discussion in this opinion.

Although the order states that "the permanent plan should remain reunification[,]" this is the first order in the record mentioning a permanent plan.

Because Mother's appeal was filed prior to 1 January 2019, it is not subject to the revised timing requirements found in the new version of N.C. Gen. Stat. § 7B-1001. See 2017 N.C. Sess. Laws ch. 41, § 8.(a) (modifying the timing requirements in N.C. Gen. Stat. § 7B-1001 for appealing a permanency planning order eliminating reunification, effective 1 January 2019).

Mother's brief addresses additional standards of review applicable to conclusions of law and statutory interpretation. Because the arguments she properly presents to this Court concern only the sufficiency of the evidence and findings made by the trial court, we neither recite nor apply those additional standards here.

In her brief, Mother calls into question the import of this finding, as the CFE was conducted as part of Nathan's and Daniel's DSS investigations, not Allison's. This is immaterial, as the trial court was permitted to consider the report if it "w[ould] aid in the court's review" and is "relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition." N.C. Gen. Stat. § 7B-906.1(c) (2017).

Mother contends that she completed all aspects of her case plan; however, prior orders of the trial court required her to "demonstrate skills learned" from the parenting classes and "demonstrate appropriate parenting once visitation resumes." Mother's lack of remorse and use of corporal punishment after attending classes disclose that she was not in total compliance with those earlier orders.

Our vacatur does not deprive the trial court of its discretion to receive additional evidence necessary to verify Grandmother on remand.